James Pepper and others *v.* Richard G. Dunlap.

Where a mortgage contains the pact *de non alienando*, the mortgagee may proceed at once against the land, without making any demand of a third possessor of the mortgaged premises, or giving him any notice such as is required in ordinary hypothecary action.

One subrogated to all the rights of his vendor, may exercise any recourse in warranty against the party from whom the latter purchased, or any action resulting from a failure of title to the property sold; and so may one, who purchased at a sheriff's sale all the right and title of the subrogated vendee.

No possession, however protracted, can confer on the occupant a title to any part of the public domain of the United States, as against the government. It may be otherwise, where the government becomes the owner, for military or other purposes, by purchase, of lands within the limits of a State, already private property. In such a case, an adverse possessor may acquire title by prescription.

Until a patent has been issued for a portion of the public lands, the title of the United States is not divested, and the whole matter is under the control of the Land Department.

Where the vendors of real estate are shown to have had no title, a regular eviction, by judicial authority, is not required, to entitle the purchaser, who has paid part of the price, to relief.

Appeal from the District Court of Madison, *Willson,* J.

*Stockton, Steele,* and *Dunbar,* for the appellants.

*Mayes* and *Copley,* contrâ.

Bullard, J. The plaintiffs sold to R. G. Dunlap, certain tracts of land, and some slaves, not now necessary to be described particularly, and reserved a mortgage to secure the payment of the price. Some of the notes not having been paid at maturity, the vendors sued out an order of seizure and sale. From that order of seizure, an appeal was taken to this court. Pending that proceeding, R. G. Dunlap sold the same property to his brother Hugh W. Dunlap, with a full subrogation to all his rights and actions against his vendors, and those under whom they claimed title, to be by him exercised and enjoyed in the same manner as they might have been by the vendor himself. It is proper, further, to premise, that the act of mortgage contains the pact *de non alienando,* and, consequently, H. W. Dunlap is not entitled to the delays and notices of a third possessor. On

the death of R. G. Dunlap, which occurred about the same time, H. W. Dunlap was appointed curator of his vacant succession.

After this court had decided upon the first appeal, and the case was remanded for further proceedings, H. W. Dunlap, asserting his title to the property, made opposition, without giving security, and a second appeal was prosecuted from a judgment dissolving the injunction thus granted. That judgment was affirmed with a modification.

H. W. Dunlap then, acting as curator of the estate of his brother, presented his petition for an injunction, in which he sets forth the sale by the plaintiffs to his intestate, of two thousand two hundred and eighty acres of land, and eighteen slaves, together with different kinds of stock, for the price of $130,000. That the sale was with a full warranty of title. He represents and alleges that the vendors had no title whatever to six hundred and forty acres of said land, to wit, section No. 22, in township 16, range 14 east, in the district north of Red River, fronting on the Mississippi, the same being vacant, and belonging to the United States; and that the vendors well knew that they were without title, but fraudulently represented that they had a good title to the same. He further represents that the plaintiffs falsely represented themselves as the sole heirs of Cicero Jefferson, *alias* Joseph Pepper, from whom they derived title to the premises; whereas Joseph M. Loony and W. B. E. Loony were entitled to a part of the inheritance, and that they have brought suit for their share. He further complains, that a payment made by his intestate to Reynolds, Marshall & Co., of $3,105 87, has never been credited on this note for $4,900, and that said note has been overpaid. He further shows, that the mortgage on the slaves was to be released, on the payment of the two first notes, which has been done. He further represents that the plaintiffs are not entitled to the back concession, not having any title to the front tract, No. 22, and that their entry of the back tract is void. He complains that the plaintiffs are prosecuting illegally their order of seizure and sale against the estate, without any order of revival against him, or the heirs of the said R. G. Dunlap. Upon these grounds, and others which it is not important to mention, he prays for an injunction, and that

the contract, as to the section No. 22, and the back concession, may be declared null and void; that the notes may be decreed to be cancelled and given up; that the plaintiffs be condemned to pay fifty dollars per acre, for the land; and that the slaves be declared free of mortgage.

An injunction was granted according to the prayer of this petition.

The defendants in the injunction set up, by way of exception, that the plaintiff therein could not maintain the action: *First*, Because the property does not belong to the estate of R. G. Dunlap, their vendee, but was sold by him to H. W. Dunlap, and has since been sold at sheriff's sale, and purchased by the wife of said H. W. Dunlap. *Secondly*, Because the plaintiff in injunction never offered to restore the property, the sale of which he seeks to rescind. *Thirdly*, Because the whole matter has been heretofore adjudged by the Supreme Court, in suit No. 127. *Fourthly*, Because the court has no jurisdiction to rescind a judgment of the Supreme Court.

In an amended petition the plaintiff in the injunction represents, that since the injunction was granted, he has been notified that the Commissioner of the General Land Office has set aside the entries made by Pepper and others, of sections 52 and 53, and for lot No. 3, of section 54, amounting to 1149 acres, forming a part of the original purchase. He further shows that, since the obtaining of the injunction, the government has sold section No. 22 to several persons.

The exceptions above stated having been overruled, H. W. Dunlap and his wife intervened in the suit, alleging the purchase of the property by the former from his brother, with a cession of, and subrogation to all actions and rights of warranty; and they unite with the curator, in praying for a rescission of the sale as it relates to the land, and for general relief.

After a trial, the court being of opinion that the order of seizure and sale could not be prosecuted in its present form against the succession of R. G. Dunlap, or against the intervenors, as third possessors, the injunction was perpetuated, reserving to the parties all their rights upon the merits.

From this judgment the original plaintiffs in the order of sei-

zure and sale, appealed; and the appellees answer that there is no error to the prejudice of the appellants; but they pray that the judgment may be reversed in their favor, and that judgment may be rendered as prayed for in their original and supplemental petitions, rescinding the sale of the land.

The case, upon this statement of the facts and the pleadings, presents three questions for our solution. *First,* Whether the court erred in deciding that the plaintiffs could not prosecute the order of seizure, either against the estate or the third possessors. *Secondly,* Whether the intervenors could exercise this action of rescission under their subrogation. *Thirdly,* Whether the evidence shows such an eviction or failure of title, as entitles the intervenors, under the pleadings, to the relief they seek.

I. The original purchaser, R. G. Dunlap, having sold the property, before his death, his vendors had a right to follow the mortgaged premises into whose hands soever they might come, and the act of mortgage, containing the pact *de non alienando,* the possessor had no right to require any notice. The mortgagees were authorised to proceed at once upon the land, without making the demands, and giving the notices required in the ordinary hypothecary action. This point was adjudged when this case was last before us; and has been decided in many other cases.

II. It appears to us equally clear, that H. W. Dunlap, under the subrogation contained in the act of sale from his brother to him, which is as broad as words can make it, has a right to exercise any recourse in warranty against the vendors of the latter, and any action resulting from a failure of title to the property sold. The sheriff's sale conveyed to Mrs. Dunlap all the right and title of her husband, and she takes the property precisely as it was holden by him, and may exercise any action which could have been maintained by the husband. This is not, properly speaking, an action of rescission, because the parties do not ask that the entire contract may be annulled, but only so far as they have lost a part of the land, by an entire failure of title, and the sale of it by the government to other persons, whose titles are paramount.

III. The third and last question remains, to wit, whether the evidence shows such an eviction of lots No. 22 and No. 52, or such a total failure of right, in relation thereto, as entitles the plaintiff in injunction, to the relief asked at our hands.

It appears to us incontestable, that James James, under whom the plaintiffs' vendors set up title, never had any to lot No. 22, founded upon any confirmation of claim, either by settlement right, or otherwise, under the Spanish or American government. On the contrary, it appears that his pretensions to the lot in question, were rejected by the land commissioners, as unsupported by evidence according to the act of Congress.

The land remained the property of the United States until the patents issued in favor of four different individuals, as exhibited in the record, covering the entire section. But it is urged that the patents were obtained by collusion with H. W. Dunlap, by his brother-in-law, and overseer, and others, who acted merely as his creatures, and that he thereby defeated the title derived from the plaintiffs. This argument would be entitled to some consideration, if Dunlap had, by any agency of his, prevented his vendors from perfecting their title, by obtaining a relinquishment on the part of the United States. But it is not shown that they took any steps for that purpose; and, in the mean time, it is clear that the land was not private property, and was liable, at any moment, to be sold as a part of the public lands. The vendors were bound, by their warranty, to make good their title; and if, upon discovering that the claim of James had been rejected, they had procured from the government a relinquishment of title, it would have enured to the benefit of their vendee, who, in that event, could not have complained that, at the moment of the sale, he was without title.

It is contended that the plaintiff in injunction has acquired a good title to the first tract, No. 22, by prescription; and that prescription runs against the government. We are not prepared to sanction the doctrine that any possession, however protracted, will confer title to the occupant, as against the government of the United States, to any part of the public domain. Nor does it appear to us, that the authorities on which the counsel relies, support him to that extent? Cases may, indeed, be supposed,

in which the government, becoming owner, by purchase, of lands within the limits of a State, already private property, for military purposes, or otherwise, might suffer an adverse possessor to acquire title by prescription. But we know of no law which establishes the presumption of a grant of any part of the public lands. In the case of *Sanchez* and *Wife* v. *Gonzales* (11 Mart. 207), to which our attention had been called, the court said, that it might be safely assumed as a general rule of prescription, that the public domain is not subjected to it by any length of time, but that a modified exception to the rule was admitted to exist, by virtue of a law of the Recopilacion of the Indies. The case turned upon the clear principle, that the sovereign power of the State, which holds the public domain for the benefit of the whole community, is not restricted by forms, as to the manner in which it may assign, and lay out any part of it; and the court held, that a putting in possession, by the surveyor general, by metes and bounds, was a valid title, without any written grant.

The evidence shows, that lot No. 22, containing 642 94-100 acres, has been declared by the Commissioner of the General Land Office, to have been erroneously marked on the plat, as covered by the confirmed claim of James, and the back land, No. 52, containing 655 38-100 acres, to have been erroneously entered. Both tracts are ordered to be surveyed, and treated as public land.

But the counsel for the appellant contends, that the Commissioner possesses no such authority. That whenever an entry has been made, it can be annulled only by judicial authority; and, in support of his doctrine, he refers us to the opinions of the attorney general of the United States. To this it may be replied, that the officers of the general government, uniformly regard a patent as the exclusive evidence of title as against the government, and that, consequently, withholding a patent is equivalent to a refusal to sanction proceedings on the part of registers and receivers, permitting entries under the different pre-emption laws. The fourth rule in relation to pre-emption cases, approved May 6th, 1836, declares, that where the officers have jurisdiction, and have proceeded regularly, the Land Office

has no power to reverse their decisions; but that, in such cases, patents will issue of course, unless there is good reason to believe, &c., that the decision was obtained by fraud, or founded *on material error of fact, or of law*, in which case, the patent will be suspended. And the fifth rule declares, that if the supposed error be prejudicial to the United States, the patent shall be suspended until the direction of Congress, or the decision of some competent judicial tribunal can be obtained, &c.

The entry of No. 52, is shown, by evidence in the record, to have been vacated, on the ground that the front tract, No. 22, was not the property of the claimant, but belonged to the domain. Until a patent was issued, we are of opinion, that the title of the government was not divested, and that the whole matter was under the control of the land department; and it is clear, from the acts of that office, that the section in question has been subdivided into lots as a part of the public lands.

It further appears that section 53, and lot No. 3 of section 54, have been declared vacant, and the entries set aside, and that a part is covered by the right of pre-emption of Gibeon Gibson.

The lands conveyed and warranted, in addition to sections 22 and 52, were fractional sections 23, 24 and 25; section 53, and lot No. 3 of section 54. Eighteen slaves, also, were sold, and the price of the whole was, $130,000, of which, $91,000 is acknowledged to have been paid in hand. The whole was sold *in globo*, and we are not enabled to say how much was given for the land, and how much for the slaves. But it appears to us clear, that there is a total failure of title as to a great part of the land conveyed, as set forth in the previous part of this opinion, and that the plaintiff in injunction is, to that extent, entitled to relief. But the evidence does not enable us to decide finally upon the rights of the parties, and especially upon the amount which the plaintiffs are bound in equity to refund. We have, however, no doubt that, as to a great part of the land, it is shown to be public, and that the vendors were without title. In such a case, a regular eviction by judicial authority, is not required to entitle the purchaser to relief. The sale of another's property is null and void.

It is, therefore, adjudged and decreed, that the judgment of the

District Court be avoided and reversed; and it is further ordered and adjudged, that this case be remanded for further proceedings according to law, and in conformity to the opinion herein expressed; and that the appellants pay the costs of the appeal.*

In the case of *The New Orleans Canal and Banking Company* v. *William Waters and others*, from the District Court of Rapides, the judgment of the lower court was affirmed, on appeal, at Alexandria, during this term of the court.

* The counsel for the appellants, on an application for a rehearing in this case, contended, that the United States hold the public lands as *ordinary proprietors*, citing the case of *The City of Mobile* v. *Eslava*, 16 Peters, 254. Vattel, Law of Nations, Book 1. ch. 17 § 199; ch. 23 § 295. Ib. Book 2, ch. 7 § 83; ch. 1, § 146. If they do not, why has it been expressly provided in every act of Congress admitting new States into the Union, that the United States shall retain their property in the public lands within the State, and that they shall be exempt from taxation. Such a provision would be unnecessary, if the lands were held by the United States in their sovereign capacity. In the case of *Mitchell et al.* v. *The United States*, 9 Peters, 760, the Supreme Court of the United States have expressly recognized the doctrine, that prescription is a good title to lands against the United States.

*Rehearing refused.*