## THOMAS HALE *v.* CITY OF NEW ORLEANS.

An exception to the ruling of the Judge in rejecting the testimony of witnesses cannot be noticed, unless it states the grounds upon which it was rejected.

The sale of a thing belonging to another person is null. It may give rise to damages, when the buyer knew not that the thing belonged to another person.

Though the sale of the property of another be null, yet, the vendor's subsequent acquisition of title vests it at once in the vendee, who cannot, afterwards, sue for a rescission.

The thing claimed as the property of the claimant, cannot be alienated, pending the action, so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another's property, and does not prevent him from being put in possession by virtue of such judgment.

Property claimed by a plaintiff cannot be alienated pending the action, so as to prejudice his rights. If judgment be rendered in his favor, the sale will be considered as the sale of another's property, and will not prevent his being put in possession by virtue of the judgment.

Before the institution of an action for the rescission of a sale, the party seeking relief must offer to place his adversary in the same situation that he was before the act of sale was passed.

The plaintiff, in an action for rescission, must establish the loss of the whole or part of the thing sold; the loss must be certain—it will not suffice if it appears probable.

The loss will be considered as certain, if a perfect outstanding title in a third person is shown to exist.

When the judgment directs one of the parties to deliver an estate to the other, the Clerk must issue a writ of possession, by which the Sheriff shall be enjoined to put him in whose favor the judgment was rendered in possession of the estate and the appertenances belonging to it, according to the judgment.

The buyer evicted from property which belonged to another, is entitled to reimbursement for all useful expenses made by him on the premises.

The damages mentioned in the fourth paragraph of Article 2482, do not include counsel fees for bringing the action in which they are sought to be recovered.

APPEAL from the Fourth District Court of New Orleans, *Price*, J. *Buchanan & Gilmore*, for plaintiff and appellant. *Thos. H. Hewes*, for defendant.

ILSLEY, J. The following is the history of this case (reported in 13 An. p. 500), which was before this Court in 1858, and thence remanded to the District Court for a new trial :

At a public sale of certain batture lots, made by the city of New Orleans, in the year 1853, twenty-two of said lots were struck off, separately, to the plaintiff, the price of twenty-one of them being $3,100 each, and that of the remaining one, $5,500.

The lots, thus purchased by the plaintiff, comprise nearly the whole square embraced within Julia and St. Joseph streets, above and below, and Fulton and Front streets, in front and rear, and are numbered on the plan 1 to 23.

The city subsequently transferred this property by notarial act of sale, to the purchaser, Thomas Hale, for the convenience of the sureties, in three parcels : one of which comprised six lots (2 to 7), for the sum of $18,600 ; another of which comprised six lots (numbered 8 to 13), for the sum of $18,600 ; and another of which comprised ten lots (numbered 13 to 23), for the sum of $33,100 ; making the aggregate price of all the lots, $70,600, payable one-fifth cash, and the balance at *one, two, three* and

21

*four* years' credit, with six per cent. interest from the day of sale; and all of which price, principal and interest, were duly paid by the purchaser.

At the time of the auction sale of these lots, a petitory action for a portion of them was pending. This action had been instituted against Municipality No. 2 (to whose rights the defendants have succeeded), by Antoine and François Remy, in the Fifth District Court of New Orleans.

This suit, after a protracted litigation, was finally decided by this Court, on the 25th February, 1856, in favor of A. & F. Remy. (See 11 An. 148.)

Upon that judgment a writ of possession issued, on the 27th May, 1856, and was returned by the sheriff, *executed*, on the 19th August, 1856, by putting the Remys in possession of the whole, or the greater portion of four of the lots, namely, those numbered 20, 21, 22 and 23—all purchased by the plaintiff at the public sale of the 15th March, 1853.

The present action was brought *on the 29th October*, 1856, to rescind the sale of the twenty-two lots of ground purchased by the plaintiff, and to recover from the city the price paid by the plaintiff for the same, with legal interest from the date of the respective payments, together with the costs of improvements, and the amount of State and city taxes, and damages.

The defendant, for answer, filed a general denial, and upon this issue a judgment was rendered in favor of the plaintiff, on the 25th March, 1857.

From that judgment an appeal was taken, and the Court being of opinion that an amended plea, offered by the defendant, to the effect that, by a notarial act of 14th March, 1857, the city had acquired all the right and title of the Remys to the lots recovered by them, which it tendered to the plaintiff as a fulfilment of its warranty, had been improperly rejected, sent the case back to the District Court for a new trial.

Upon the second trial of the cause in the District Court, there was judgment in favor of the defendant, and the plaintiff is now prosecuting this appeal.

The main grounds of the plaintiff's reliance, for a reversal of the judgment in favor of the defendant, are, in effect:

I. That the sale from the city to him of the lots described in his petition, is a nullity; and that his vendor could not cure that nullity by acquiring the outstanding title of the real owner, *after* he, the plaintiff, had instituted his rescission action, to have the nullity judicially declared.

II. That the nullity invoked is not restricted, in its effect, to the lots actually recovered by the owners of them; but, as the eviction from these defeats the object of the whole purchase, he is entitled to claim the rescission of the sales of all the lots purchased by him.

His money claim against the city, if his action prevails, consists of the following items :

1. Reimbursement of the price paid by the plaintiff to the city.

2. Interest on that price.

3. Reimbursement of paving, paid by the plaintiff since the sale.

4. Reimbursement of the city and State taxes, paid by the plaintiff on the property, and counsel fees.

On the first appeal, the decree only concluded the plaintiff as to the admissibility of the amended answer, styled a peremptory exception, and of the notarial act of sale and compromise of 14th March, 1857, leaving open to him every defence of law against that compromise, to which he was not a party.

I. The plaintiff's action rests on Article 2427 C. C., which provides that "the sale of a thing belonging to another person is null; it may give rise to damages, when the buyer knew not that the thing belonged to another person."

The basis of the decree in the lower Court, on the second trial of the case, was the fact that the city had acquired the Remy title, and that, that title enuring to the benefit of its vendee, all its obligations as vendor were satisfied.

Leclerq, in his work, entitled "Droit Romain," etc., vol. 5, p. 279, supposes the case of the purchaser being ignorant that he bought the thing of another, which was delivered to him by the seller, and admits that the buyer might have the contract declared null, on restoring the thing, etc. But, if, before the contract be annulled by competent authority, the seller should acquire the thing, which he had delivered, it is the opinion of the author that the purchaser would then not have the power to cause the sale to be annulled ; because every obligation on the part of the vendor would be fulfilled ; the purchaser acquires the property in the thing sold, as well as the possession; and, consequently, the contract stands fully executed.

In the case of *Bonin* v. *Essaline*, 12 Martin, 228, the Court says : "The principle established by the latter part of the case (as stated by Leclerq); we are inclined to think correct; evidently so, in a case where no action for rescission has been commenced," and no such action had been commenced in that case.

No one contests the correctness of the general rule that, though the sale of the property of another be null, yet, the vendor's subsequent acquisition of title vests it at once in the vendee, who cannot, afterwards, sue for a rescission. It was so held in *Bonin et al* v. *Essaline*, 12 M. 228; in *McGuire* v. *Amelung*, ib. 649 ; in *Lee* v. *Fergusson*, 5 An. 533 ; *Fenn* v. *Rills*, 9 La. 99; *Stokes* v. *Shackleford*, 12 La. 173, and *Woods* v. *Kendall*, 5 N. S. 247.

And the principle obtains under the common law, which estops the

grantor from setting up an after-acquired title against the grantee ; for it is a perpetually operating covenant, and as estoppels ought to be reciprocal, equity requires that both parties should be bound reciprocally. Greenleaf on Evidence, vol. 1, § 24.

But no decision of our own Courts has been pointed out to us, nor are we aware of any, wherein the question was directly presented, as it is in this case, in which the sale of another's property was maintained, when the vendor had acquired the real title, after the institution, by the purchaser, of the rescissory action to annul the sale on that account. Under our law, differing in this respect from the Roman law; which only imposed on the seller the obligation of procuring for the purchaser the undisturbed possession of the thing "la libre possession de la chose," the contract of sale is a direct and immediate transfer of the property sold, "la translation immédiate et directe de la propriété vendue," and hence, as Marcadé observes, "aujourd'hui que vendre c'est opérer immédiatement la translation de propriété, il est clair que, par la force même des choses, je ne puis pas vendre ce qui ne m'appartient pas; ce dont je n'ai pas la propriété, puisqu'on ne saurait transmettre à un autre le droit qu'on n'a pas soi-même." "Nemo plus juris ad alium transferré potest quam ipse haberet." "La vente de la chose d'autrui est donc nulle aujourd'hui, nulla est venditio; il n'y a pas de vente; il y a un acte qui présente les apparences d'une vente, mais qui n'en est pas une. * * * * * * Cette vente purement apparente est donc sans réalité juridique, et son inexistence légale peut être opposée sans difficulté, tant par le vrai propriétaire contre l'acheteur, que par celui-ci contre le vendeur."

Article 2427 of our Civil Code corresponds verbatim with Article 1599 of the Napoleon Code, and hence the decisions of the tribunals of France and the dicta of able commentators, which tend to expound the corresponding Article of the French Code, may very properly be resorted to, to aid us in ascertaining the full import of our own Article.

Zachariæ, a German writer of great celebrity, thinks that, upon principle, the seller of a thing belonging to another, has no right to deprive his vendee of his action of nullity by purchasing the adverse title, even before the latter should have brought such an action.

Marcadé does not admit the correctness of this doctrine to the same extent as is contended for it by Zachariæ; but he distinctly admits and advocates the doctrine, that no purchase made by a seller can have the effect of defeating the purchaser's action of nullity instituted *before* such purchase. He examines the question with his usual masterly ability and logical acumen. We transcribe his argument in his own words:

"L'acquisition de la propriété par le vendeur n'empêche plus l'acheteur de faire proclamer la nullité, quand son action en nullité *était déjà intentée* au moment où cette acquisition est faite. C'est évident, puisque, l'acheteur n'étant pas encore devenu propriétaire au moment où il a intenté son action en nullité, et prouvant par cette action qu'il entend

ᴠᵖᵘⁱⁱᵉʳ tous les effets que la convention pourrait avoir, la propriété ne ... rait lui être acquise ultérieurement; on ne devient pas propriétaire ι algré soi. Le fait, par l'acheteur, d'intenter l'action en nullité, empêche donc la propriété, que le vendeur acquiert ensuite, de passer de la tête de celui-ci sur la sienne, et la vente reste dès lors nulle, comme elle l'était ab initio."

Again, still commenting on Article 1599 (our Article 2427), the same author says:

"De même que l'acheteur ne peut plus agir en nullité quand son vendeur acquiert la propriété de la chose avant l'action intentée, de même il ne le peut plus et la vente devient valable, quand le vrai propriétaire vient ratifier l'acte. Mais, ici, encore, il faut que la ratification précède l'action de l'acheteur, sans quoi celui-ci resterait libre, comme ci-dessus, de faire proclamer la nullité. En effet, tant que l'acheteur, qu'il sache ou qu'il ignore que la chose est à autrui, n'invoque pas la nullité de l'acte, il entend donc conserver la chose et en avoir la propriété, d'où la conséquence que, quand le vrai propriétaire vient déclarer qu'il ratifie l'acte et cède sa propriété à l'acheteur, il y a concours des deux volontés, et la propriété se trouve ainsi transmise au possesseur à partir de ce moment. * * * * * * Mais quand le propriétaire ne vient ratifier qu'après l'action en nullité déjà intentée par l'acheteur, cet acheteur n'ayant plus la volonté de conserver la chose, au moment où le propriétaire manifeste celle de la lui attribuer, le concours des volontés n'existe plus et la ratification reste sans effet."

Troplong partakes of the same opinion as that expressed by Marcadé; he says (De la Vente, No. 236): "On doit même décider que si *avant que la nullité de la vente soit demandée*, la propriété vient à se consolider sur la tête du vendeur, soit parcequ'il a acheté la chose, soit parcequ'il en a hérité du véritable propriétaire, la vente se trouve validée." And in support of this doctrine we find Delvincourt (vol. 3, p. 131), Duranton (16, p. 179), Troplong (No. 236), Duvergier (1, 219), and several decisions of the French Courts, expressing the same opinions; and in a note (vol. 2, page 502, Zachariæ, Cours de Droit Civil Français) that author observes: "Les auteurs et la jurisprudence s'accordent à reconnaître ce principe, toutefois avec la restriction que la demande ou l'exception de nullité proposée par l'acheteur devrait être rejetée si dès avant l'époque à laquelle la demande a été introduite ou l'exception opposée, le vendeur était devenu propriétaire de la chose vendue."

And in the matter of *Jourdan* v. *Lecourt*, the Court of Cassation, 1856, vol. 2, p. 209, decides: "Que l'acquéreur de la chose d'autrui ne peut plus demander la nullité de la vente lorsque cette vente a été, *avant toute action de sa part*, ratifiée par le propriétaire."

The doctrine of Marcadé, and of the other commentators, and of the tribunals of France, the plaintiff applies thus to this case:

The city sold to Hale the property of the Remys. That sale was null;

it conveyed no right to the purchaser. The city, subsequently however, bought the Remy title. That purchase would have enured to the benefit of Hale, had Hale not manifested his intention by an action of nullity to refuse to become the owner. His semblance of a purchase from the city was a nullity.

It was optional for him to refuse to become the owner. The action of nullity manifested the refusal on his part, and this action was instituted previous to the manifestation of the will of the owners of the property to make him the owner.

This was intended by the city to have the effect of a sale from the Remys to Hale.

But the contract of sale is a bilateral contract. It requires two wills. The consent of Hale to the sale by the Remys would have been presumed in law, had he remained in possession up to the time of that sale without complaining.

But it is impossible to presume such a consent in the face of the action of nullity instituted by him against the city.

The reason of the doctrine is, therefore, plain.

It results from the text of Article 2427 of our Civil Code, which pronounces the contract between the plaintiff and the defendant to be a nullity.

The Article 2428 treats it as a nullity, as the possession of Hale is no obstacle to the proceeding of the Remys against the city.

It was out of the power of the city, by the aid of the Remys, to make a contract for the plaintiff against his will, on the 14th March, 1857, which should be valid and binding upon him, and should take the place of the void contract of the 15th March, 1853.

For, as Marcadé, in further demonstration of his doctrine, says, there was no contract at all for the land recovered by the Remys, until the contract by which they themselves sold, and that contract only took effect *from the moment it was made.*

"Nous disons," says Marcadé, "*à partir de ce moment;* car il est bien évident que ce n'est pas là une ratification proprement dite, venant *confirmer* l'acte et en assurer l'effet *rétroactivement* à compter du jour même de sa date: on ne peut pas confirmer une vente légalement inexistante. Le second acte n'est donc, sous le nom impropre de ratification, que la cession même de la chose, et c'est à partir de sa date, sans aucune rétroactivité, que l'acheteur est propriétaire."

The defendant, however, contends, that the plaintiff cannot maintain his rescissory action, because no judgment was ever rendered in favor of the Remys against him; and he could not have been evicted from the property under the judgment against the city, until he was made a party to it, and there had been a judgment against him for its delivery; and because the sale from the Remys to the city has quieted Hale in his title to and possession of the property.

The appellee directs our attention to a bill of exceptions to the ruling of the District Judge, rejecting the testimony of two witnesses offered by him on the trial of the case. This bill has been already passed upon by this Court on the first appeal, and, as was properly observed in regard to it : "We cannot notice it; because it does not contain the grounds upon which the testimony was rejected, and we have no means of judging correctly of the ruling of the Court. See 13 An. 501; *Bonnaffe* v. *Wiltz,* 10 An. 657.

By the textual provision of our law, no alienation of the thing claimed as the property of another, can be made pending the action so as to prejudice his right. If judgment be rendered for him, the sale is considered as a sale of another person's property, and does not prevent him from being put in possession by virtue of such judgment (Article 2428, C. C.); and it was not necessary to make Hale a party to the Remy suit. *Kohn et al.* v. *Byrne,* 10 Rob. 114.

In the case of *McDonald* v. *Vaughn* (14 An. 717) the Court, we think, laid down the true doctrine as to what constituted in law, a justification on the part of the purchaser of property to resort to the rescissory action. That case was analogous to this one, and says the Court therein : "No active disturbance is shown to have occurred in this case, nor was it necessary: it suffices for the plaintiff to establish the loss of the whole or a part of the thing sold. This loss must, however, be certain; it does not suffice that it appears probable."

The loss would be certain, if a perfect outstanding title existed; and such a title to the property sold to Hale, the city knew was that of the Remys. But, we are satisfied, however, that the eviction of the plaintiff from the four lots of ground recovered by the Remys, is fully proved; and that the city, having acknowledged that fact in the notarial act of the 14th March, 1857, is thereby estopped from gainsaying it. C. P. 630, 632 and 633; *Bissell* v. *Erwin,* 15 La. 99.

The view we take, in regard to the plaintiff's right to maintain his rescissory action, notwithstanding the purchase of the city of these lots from the Remys, for the purpose of quieting thereto the plaintiff's title and possession, is adopted, after considering maturely the reasons for the distinction drawn by the commentators of the French Code, and the tribunals of France as to the effect of such an action, instituted *before* and one instituted *after* a vendor has acquired the real title to the property sold by him.

It differs from the opinion intimated by this Court on the first trial of this case, but the question was not then, as it is now, presented for a final solution, and did not undergo a thorough examination.

II. The lots of ground were adjudicated to the plaintiff at the auction sale, separately and for a distinct price for each lot, as appears by the proces-verbal of the auctioneer. The adjudication was the completion of the sale and *that*, rather than the notarial transfer, determined the

nature and extent of the warranty. For the convenience of the parties, the lots were in the notarial act transferred not separately but collectively, in parcels, and for aggregate prices, but the sale, nevertheless, purported to be made pursuant to, and on the terms and conditions of the public sale and adjudication, which was its basis. The Court, on the first appeal of this case, very properly held that the sale of the lots was the sale of a number of independent things, giving a right of warranty as to each, and the purchaser has no action of rescission, except for such lots as have been deprived of their proportions by eviction.

For the very satisfactory reasons which the Court assigned, the rescissory action of the plaintiff must be restricted to the lots Nos. 20, 21, 22 and 23. The land recovered by the Remys, in their petitory action against the city, crosses the square in which the plaintiff's lot lie, diagonally in such a manner as to leave of lot No. 23 only a small triangle, unfit for any useful purpose, measuring 46 feet, 1 inch on St. Joseph street, by 13 feet 1 inch and five lines on Front street, taking the whole of lot No. 22; the whole front of lot No. 21 on Front street, and one foot of its front on Fulton street, and from lot No. 20, taking five feet of the front on Front street, and one foot of its front on Fulton street. These lots, including the most valuable one, are either entirely taken away or cut up in such a manner as to destroy their market value. No portion of lot No. 22 remains, and the parts of lots Nos. 20, 21 and 23, recovered by the Remys are of such consequence, relatively to the remaining portions, that the buyer, it must be supposed, would not have purchased them, without the parts from which he is evicted. The sales of these four lots must, therefore, be rescinded. See Articles 2427 and 2428, C. C. *Hall* v. *Nevill*, 3 An. 327.

The aggregate price of the adjudications of these four lots, was fourteen thousand eight hundred dollars, that is to say $3,100 each for three of the lots, and $5,500 for the remaining one. Of this amount ($14,800) the purchaser, Hale, had paid previous to the 19th August, 1856, *eleven thousand eight hundred and forty dollars*. On the 15th March, 1857, he paid the last instalment of *two thousand nine hundred and sixty dollars;* and he is entitled to judgment for this total amount of *fourteen thousand eight hundred dollars* ($14,800) with interest thereon till final payment, at the rate of five per cent. per annum, from the nineteenth day of August, in the year one thousand eight hundred and fifty-six, the date of the actual eviction by the Sheriff. On the sum of eleven thousand eight hundred and forty dollars, and on two thousand nine hundred and sixty dollars, from the nineteenth day of August, eighteen hundred and fifty-seven.

Two items remain to be disposed of; the bill paid by Hale for the paving of the sidewalks, etc., in front of the lots 20, 21, 22 and 23. Also the State and city taxes, paid by him on the said lots.

The buyer evicted from property, which belonged to another, is entitled to reimbursement for all useful expenses made by him on the premises.

2485 C. C. *Laiser* v. *Genares*, 10 An. 178. Pothier Contrat de Propriété; and for the reasons, entirely satisfactory to us given on the first trial of the case in this Court; the city is legally bound for the pavement and gutters in front of the four lots above described.

The total amount of the paving-bills in front of the twenty-two lots, was *three thousand eight hundred and forty-seven dollars and forty-seven cents*, and the proportion thereof, at the rates charged, is thirteen hundred and two dollars and thirty-two cents, and for this last named sum, also, with interest thereon at the rate of five per cent. per annum, from the 19th of August, 1856, the plaintiff must also have judgment against the defendants. See 13 An. 502.

We think that the plaintiff is not entitled to the reimbursement of taxes paid by him on the four lots, in 1854, 1855 and 1856. The reasons already assigned for reaching this conclusion are satisfactory to us.

A claim was also set up for counsel's fees, which however, does not seem to be insisted on, on the present trial of the case. In any event, we do not think that the plaintiff is legally sustained in urging such a claim. This Court (in 13 An. 502) said: "On a reconsideration of the question, we think that the damages mentioned in the fourth paragraph of Article 2482 do not include counsel fees for bringing the action in which they are sought to be recovered. We are satisfied with the reasoning of the Court in the case of *Melancon's Heirs* v. *Robechaud's Heirs*, 19 La. 357."

The judgment of the lower Court must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of the Court below be annulled, avoided and reversed, and proceeding to give such judgment as should have been rendered by the said Court:

It is further ordered, adjudged and decreed, that the sale and adjudication of the four lots of ground, purchased on the 15th March, 1853, by the plaintiff, Thomas Hale, from Municipality No. 2 (now the First District of the city of New Orleans), the said lots situate and being on the batture, in the square bounded by Front, Julia, Fulton and St. Joseph streets, being designated on the plan of J. A. Beard, dated 12th June, 1852, deposited among the archives of H. B. Cenas, notary public, as the lots numbered twenty (20), twenty-one (21), twenty-two (22) and twenty-three (23), measuring, each of them, 23 feet 3 inches and 1 line, on Front street, being the same lots described in the auctioneer's procès-verbal, dated 15th May, 1853, and in the notarial transfer from the city of New Orleans to Thomas Hale, on the 31st March, 1853, be, and the sale and adjudication of the said four lots of ground are hereby, cancelled and rescinded.

It is further ordered, adjudged and decreed, that the plaintiff, Thomas Hale, do recover from and have judgment against the defendant, the city of New Orleans, for the sum of fourteen thousand eight hundred dollars,

with interest thereon till paid, at the rate of five per cent. per annum, from the nineteenth day of August, eighteen hundred and fifty-six, on the sum of eleven thousand eight hundred and forty dollars, and a like interest on the sum of two thousand nine hundred and sixty dollars, from the twenty-fifth day of March, eighteen hundred and fifty-seven.

It is further ordered, adjudged and decreed, that the said plaintiff, Thomas Hale, do recover from and have judgment against the defendant, the City of New Orleans, for the further sum of thirteen hundred and two dollars and thirty-two cents, with interest thereon, at the rate of five per cent. per annum, from the nineteenth day of August, eighteen hundred and fifty-six.

It is further ordered, adjudged and decreed, that the plaintiff's claim for taxes and counsel's fees be rejected, and that the sale and adjudication of the remaining *eighteen* lots of ground be and the same is hereby maintained.

It is further ordered, adjudged and decreed, that the defendant and appellee pay all the costs in both Courts.