(110 So. 637)

No. 26271.

### BICKHAM v. KELLY.

(May 31, 1926. On Rehearing, Nov. 2, 1926. Application for Further Rehearing Denied Nov. 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Vendor and purchaser ⊜⇒54—Sales; sale is a direct and immediate transfer of property sold.**

Under law of Louisiana, a contract of sale is a direct and immediate transfer of the property sold.

2. **Vendor and purchaser ⊜⇒8—Sales; sale of property, which vendor does not own, if not absolutely void, is voidable at option of vendee (Civ. Code, art. 2452).**

A sale of property to which vendor has not complete title, if not absolutely void, under Civ. Code, art. 2452, is voidable at option of vendee at any time before or after its completion.

On Rehearing.

3. **Vendor and purchaser ⊜⇒112(1)—Sales; purchaser is entitled to rescissory action, though not actually nor judicially evicted, if perfect title exists in third person.**

A purchaser is entitled to rescissory action against his vendor, though he has not been actually or judicially evicted, if perfect title exists in some third person whereby it is rendered legally certain that his vendor had no title.

4. **Vendor and purchaser ⊜⇒123—Sales; purchaser held not to have shown perfect title in others than vendor, entitling her to rescission, under statute, as for eviction (Civ. Code, arts. 2452, 2501).**

Under Civ. Code, arts. 2452, 2501, purchaser of land seeking to rescind contract, showing only that railroad had deed to undivided one-half interest in property conditioned on its building depot, and that two other persons had an one-eighth interest in property at the time of the sale, which interests ,vendor had acquired, *held* not to have established perfect title in another than vendor entitling her to rescission.

5. **Vendor and purchaser ⊜⇒123—Sales; in unsuccessful action for rescission of contract, court may require vendor to give purchaser security against eviction, though not asked in pleading (Civ. Code, arts. 2452, 2557).**

In unsuccessful action, under Civ. Code, art. 2452, to rescind contract for purchase of land, court, under article 2557, may require defendant vendor to give security against possible eviction of plaintiff, though neither party has asked for such disposition of case.

On Application for Further Rehearing.

6. **Vendor and purchaser ⊜⇒123—Sales; purchaser, unsuccessfully suing to rescind, if not in default at the time, is not liable for attorney's fees of defendant reconvening for balance of unpaid notes.**

Where plaintiff, suing to rescind contract to buy real estate, was not in default at the time, *held*, vendor, reconvening for amount due on unpaid notes, was not entitled to recover attorney's fees.

Overton and Rogers, JJ., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by Mrs. Clyde Bickham against Henderson D. Kelly. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Albert P. Garland and N. B. Carstarphen, both of Shreveport, for appellant.

John B. Files, of Shreveport, for appellee.

ROGERS, J. Plaintiff sues to rescind the sale of certain real estate made to her by the defendant; for the return of the amount paid on account of the purchase price; to cancel the notes representing the unpaid portion of the purchase price; and to recover the amount paid by her for taxes and improvements on the property. Plaintiff alleges, as her cause of action, that there were

outstanding interests in said property owned by the Texarkana, Shreveport & Natchez Railroad Company, by J. M. Hoss, Jr., and by Mrs. W. H. Elder, an interdict; that she did not intend to purchase an undivided interest in said property; and to the extent of said outstanding titles she has been evicted therefrom.

Defendant answered, denying that the railroad company and J. M. Hoss, Jr., had any interest in the property, and averring that he had acquired the interest of the interdict, which acquisition inured to the benefit of plaintiff. He reconvened to recover the amount due on the unpaid notes of the vendee and for the enforcement of the mortgage against the property.

The court below annulled the deed of sale, ordered the return of the purchase price, gave plaintiff judgment for the amount expended for taxes and improvements, and condemned her to pay defendant for the use and occupancy of the property. Defendant has appealed from the judgment.

The facts of the case are, substantially, as follows, viz.:

James M. Hoss, Sr., was the original owner of the tract of land on which the unincorporated village of Hosston is now situated. On December 8, 1898, he conveyed to the Texarkana, Shreveport & Natchez Railroad Company a strip of land 100 feet wide through said property as a right of way, and also an undivided one-half interest in the remaining property. The consideration expressed in the deed was $1 and the enhancement in value of the vendor's adjoining lands by the building of the railroad. The transfer of the undivided one-half interest was conditional upon the construction within 12 months by the railroad company of a station and depot upon said land. Shortly after the railroad track was laid through the village, the company erected a small house for use as a flag station and for receiving and discharging freight. In the year 1901, the Texarkana, Shreveport & Natchez Railroad Company sold to the Texas & Pacific Railroad Company, and that company, about 1904 or 1905, built a depot and installed an agent.

James M. Hoss, Sr., died in 1899, leaving a widow and four children, three of whom were minors. On November 18, 1899, Mrs. Emma Hoss, the surviving widow, acquired by judgment of adjudication the interest of her minor children. The records do not show that she acquired the interest (an undivided one-eighth) of her major child, John M. Hoss, Jr. On December 15, 1900, Mrs. Hoss and the railroad company platted the village and formally dedicated its streets and alleys. This dedication was duly placed of record.

On October 22, 1908, Mrs. Emma Hoss, as the sole owner, sold blocks 8, 9, and 10 of Hosston to W. H. Adams, who was married at the time to Martha C. Adams. Mrs. Adams died in 1914, leaving, as the issue of the marriage, four children, to wit: Mrs. Ella A. Elder, Mrs. Minnie A. Robinson, Mrs. Wallace A. Collins, and George Adams. On February 26, 1917, W. H. Adams and his said children made a partition in kind of the real estate belonging to the community existing between himself and his deceased wife, by executing deeds to one another of various portions of the property. At the time these transfers were made, Mrs. Ella Adams Elder, one of the children and heirs, was confined in an insane asylum, and though not legally interdicted, was notoriously insane. Her name was signed to the deeds by her husband, W. H. Elder, in the belief that he was authorized to do so, and with the knowledge and consent of the other parties to said instruments.

On October 16, 1917, Mrs. Robinson sold lots 9 and 10 of block 9 to the defendant; and on December 5, 1918, she sold him lots

2 and 4 of block 9. On October 16, 1917, defendant acquired from George Adams lots 7 and 8 of block 9, and on September 27, 1918, he purchased from the same party lots 5 and 6 of block 9. As the result of these several purchases, defendant became the owner of lots 3, 4, 5, 6, 7, 8, 9, and 10 of block 9, on which portion of ground he erected a house. On February 18, 1920, he sold the property to plaintiff for $4,000, of which $1,000 was paid in cash, and the balance was represented by three notes of $1,000 each, payable, respectively, on the 1st day of December, 1920, 1921, and 1922. Shortly after her purchase, plaintiff took possession of the property and was actually occupying it at the time the present suit was instituted.

Plaintiff paid $1,500 on account of her notes, leaving $1,500 due and unpaid. In January, 1923, being desirous of making a loan to be secured by mortgage on the property, she obtained from defendant an abstract of title, on the examination of which, she learned, for the first time, as she had purchased, apparently, without such examination, that the title was defective. She was informed by defendant when he delivered the abstract that the "title was a little cloudy," but that he would "go to court to have it corrected." Plaintiff was not satisfied with this and instituted suit for a rescission of the sale. The suit was dismissed as in case of nonsuit. In the meantime defendant employed attorneys to perfect the title. On March 3, 1923, a suit was filed for the interdiction of Mrs. Elder. Judgment of interdiction was rendered on April 4, 1923. On April 11, 1922, her sisters and brother sued her for a partition in kind of the property attempted to be partitioned by their father, W. H. Adams. On the same day the present suit was filed. On April 23, 1923, judgment was rendered by the same district judge who decided the instant suit in plaintiff's favor, authorizing the curator

of the interdict to approve and ratify the partition in kind attempted to be made by W. H. Adams and his children in 1917, and to execute the necessary deeds on behalf of the interdict to carry the partition into effect, which was done. On May 2, 1923, defendant answered this suit. On June 2, 1923, after the evidence was in, but before argument, he filed an exception of no right or cause of action.

Defendant contends that, as the plaintiff is in the undisturbed possession and enjoyment of the property, she is without right to maintain any action to set aside the sale on the ground that his title is defective.

[1] Under our law, unlike the Roman law and the ancient French law, the contract of sale is a direct and immediate transfer of the property sold. Hale v. New Orleans, 18 La. Ann. 324; Bonvillain v. Bodenheimer, 117 La. 809, 42 So. 273. The obligation is upon the seller of warranting the buyer against eviction from the thing sold. Civ. Code, art. 2501. And "eviction" is defined as:

"The loss suffered by the buyer of the totality of the thing sold, or a part thereof, occasioned by the right or claims of a third person." Civ. Code, art. 2500.

"A sale by a vendor without title vests no right of ownership in the vendee, and is null as a sale of a thing belonging to another. Civ. Code, art. 2452 (2427)." Bonvillain v. Bodenheimer, referred to supra, pages 808, 809 (42 So. 278).

In Pepper v. Dunlap, 9 Rob. 289, and Hall v. Nevill, 3 La. Ann. 326, the principle was recognized that actual eviction is not necessary where there is an outstanding title in a person other than the vendor. It was held in McDonold v. Vaughan, 14 La. Ann. 717, that a purchaser is justified in resorting to the rescissory action in a case where no active disturbance is shown; it being sufficient for him to establish the loss of the whole or a part of the thing sold. This case was affirmed in Robbins v. Martin, 43 La. Ann. 488, 9 So. 108. There the outstanding title

existed in other persons than plaintiff's vendor. In Bonvillain v. Bodenheimer, referred to supra, this court reviewed the codal articles and jurisprudence on the subject, and held that the sale of a thing belonging to another person is null; that the purchaser incurs no obligation to pay the price, and may sue to annul the sale and recover the price paid at any time, though he may not have been actually evicted or disturbed in his possession by the true owner.

In the light of this jurisprudence we must consider the true doctrine of the law to be that a purchaser is entitled to the rescissory action against his vendor, although he has not been actually or judicially evicted, where there is a failure or want of title in the vendor to the whole or to a part of the thing sold.

At the time of the sale to the plaintiff, the records disclosed the following outstanding titles in the property, viz.:

(1) An undivided one-half interest in the Texarkana, Shreveport & Natchez Railroad Company.

(2) An undivided one-eighth interest in J. M. Hoss, Jr.

(3) An undivided one-eighth interest in Mrs. Ella A. Elder.

Defendant contends that the title of the railroad company has been lost or forfeited by reason of its failure to build a depot within the time stipulated in its contract with J. M. Hoss, Sr. This may be true, although plaintiff argues that the stipulations of the deed were fully complied with; nevertheless, we fail to see how we can effectively pass upon that issue, even if it were pertinent, since the railroad company has not been made a party to this suit.

Defendant contends, further, that J. M. Hoss, Jr., was without interest in the property because, under date of May 3, 1923, he executed a notarial acknowledgment and quitclaim in favor of plaintiff. He also claims that, by reason of the interdiction and partition proceedings, the interest of Mrs. Elder in the property has been divested to the advantage and benefit of the plaintiff.

Plaintiff, on his part, attacks the validity of the instrument executed by J. M. Hoss, Jr., and the legality of the proceedings concerning Mrs. Elder.

[2] We find it unnecessary to pass upon the contentions of the respective litigants in regard to the title of the railroad company, the so-called conveyance of interest by J. M. Hoss, Jr., and the interdiction and partition proceedings affecting Mrs. Elder, for it cannot be denied that, according to the records each of these parties had an interest in the property at the time defendant sold it to the plaintiff. Defendant's title was imperfect. To the extent of the outstanding interests he was powerless to transfer ownership, and therefore he sold a thing that belonged to others. Such a sale, if not absolutely void, is voidable at the option of the vendee at any time before or after its completion. Bonvillain v. Bodenheimer, supra, page 809 (42 So. 273). Nor do we think that plaintiff's right to maintain his rescissory action was adversely affected by the proceedings taken for the purpose of quieting his title and possession. Granting that the instrument signed by J. M. Hoss, Jr., was valid, and that the proceedings concerning the interdict were legal, they could not inure to the benefit of plaintiff, unless she had manifested her intention of accepting said benefit. It was optional with her to refuse to accept the so-called ratifications of the title. The rescissory action manifested the refusal on her part, and this action was instituted before any steps were taken to perfect the title. See Hale v. City of New Orleans, supra, pages 325, 326; Brewer v. N. O. Land Co., 154 La. 450, 97 So. 605. Moreover, no attempt was made by the defendant to secure the cancellation from the records of the out-

standing title in the Texarkana, Shreveport & Natchez Railroad Company, or its successor, the Texas & Pacific Railroad Company.

Defendant has not offered to give security for the validity of the title, so that we are not called upon to determine the applicability, vel non, of Civ. Code, art. 2557.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.

O'NIELL, C. J., concurs in the decree.
ST. PAUL, J., concurs in the decree.

On Rehearing.

LAND, J. As stated in our original opinion, defendant sold to plaintiff on February 18, 1920, lots 3, 4, 5, 6, 7, 8, 9, and 10 of block 9 in Hosston, La., on which defendant had erected a house.

The consideration of this sale was the price of $4,000, of which $1,000 was paid in cash, and the balance was represented by three notes of $1,000 each, payable, respectively, on the 1st day of December, 1920, 1921, and 1922.

Plaintiff took possession of the property, and paid $1,500 on account of her notes, leaving $1,500 due and unpaid. Plaintiff purchased, apparently, without examination of title, and, having subsequently discovered that defendant's title was defective, instituted the present suit to rescind the sale and to recover the amount of the purchase price paid by her to defendant, to wit, $2,500, with interest from date of payment.

Plaintiff was in undisturbed possession of the property at the date of the institution of this suit for the rescission of the sale and the recovery of the purchase price paid. Plaintiff contends that the following outstanding titles appear against the property: (1) An undivided one-half interest in the Texarkana, Shreveport & Natchez Railroad Company. (2) An undivided one-fourth of one-half interest in J. M. Hoss, Jr. (3) An undivided one-fourth of one-half interest in Mrs. Ella Adams Elder. Plaintiff's position is that these are valid, outstanding titles; that defendant has sold to her the property of third persons, and the sale is therefore null and void under article 2452 of the Civil Code; that she has been legally evicted because of these outstanding titles, and is entitled to sue for the rescission of the sale and the return of the purchase price, although she has not been disturbed in her possession by suit on the part of any of these claimants.

[3] It is true that actual eviction is not necessary, "if a perfect title exists in some third person, whereby it is rendered legally certain that his vendor had no title." Robbins v. Martin, 43 La. Ann. 488, 9 So. 108; McDonald v. Vaughan, 14 La. Ann. 716; Laurans v. Garnier, 10 Rob. 425; Thomas v. Clement, 11 Rob. 402; De St. Romes v. City, 34 La. Ann. 1201; Bonvillain v. Bodenheimer, 117 La. 807, 808, 42 So. 273; Kuhn v. Breard, 151 La. 546, 92 So. 52.

[4] But we fail to find any perfect, outstanding title in any of the third persons mentioned in this case. The railroad company has only a title conditioned upon the building of a depot. Upon its face the deed does not convey the property directly and immediately, but its transfer depends upon the performance of the condition, and, in default of compliance, it is stipulated in the deed from J. M. Hoss to the railroad company that the property shall revert to him.

J. M. Hoss, Jr., has executed to plaintiff a quitclaim deed as to his interest in the property, and has acknowledged in the deed, which has been recorded, the receipt from his mother, as surviving widow in community of J. M. Hoss, deceased, of his proportionate share of the purchase price. Under these circumstances, J. M. Hoss, Jr., and his heirs and assigns, would be estopped from denying plaintiff's title, thereby precluding the possibility of eviction.

It is true that the partition made on February 26, 1917, between Wm. H. Adams, widower, and the heirs of his deceased wife, appears to be defective, as Mrs. Ella Adams Elder, one of the heirs, and who was insane at the time, was not a party to the proceeding, except through the signature of her name by her husband. This defect, however, has been cured by judgment and order of the district court of Caddo parish, under which the duly appointed and qualified curator of the interdict has conveyed her interest to her coheirs, the vendors and warrantors of defendant, and has expressly ratified the partition previously made on February 26, 1917. While as between the coheirs and the defendant, their vendee, the acquisition of the interest of the interdict inures to the benefit of the defendant, this fact does not appear upon the face of the recorded deeds conveying this interest to the coheirs, and eviction of plaintiff might be possible, in event of sale by the coheirs of the interest acquired from the interdict to a third person.

Plaintiff has been in quiet possession of the property since February 18, 1920, and defendant erected a house thereon the latter part of the year 1916.

The danger of eviction is remote, in our opinion, under all of the circumstances of the case.

As said in Kuhn v. Breard, 151 La. 552, 92 So. 52, 54:

"We imagine that no case can be found in our jurisprudence which sustains the proposition that a sale can be annulled or rescinded * * * on the mere allegation and proof of a possible title in some one other than the plaintiffs' vendor."

The title of the railroad company evidences upon its face a mere possible title, and not an outstanding, perfect title in some third person.

It is possible that the coheirs of Mrs. Ella Adams Elder, the interdict, may transfer to a third person the one-eighth interest acquired by them from her, but it is not at all probable that they will do so, as they are the vendors and warrantors of the defendant, who sold this property to the plaintiff. Plaintiff's case does not fall, therefore, within the purview of article 2452 of the Civil Code as to the sale of a thing belonging to another.

It is provided in article 2557 of the Civil Code that—

"If the buyer is disquieted in his possession, or has just reason to fear that he shall be disquieted by an action of mortgage, or by any other claim, he may suspend the payment of the price until the seller has restored him to quiet possession, or caused the disturbance to cease, unless the seller prefer to give security."

As is said in Rousseau v. Tête, 6 Rob. 472:

"The Civil Code nowhere recognizes in the buyer the right of having the sale avoided on account of defects in his title; but provides (article 2535 [2557]) that if the buyer be disquieted in his possession, or has just reason to fear that he will be disquieted, he may suspend the payment of the price, until the seller has restored him to quiet possession, unless the seller prefer to give security. A defective title which does not vest in the buyer a legal right to the property may well create in his mind a just reason to fear being disquieted, and authorize him to suspend the payment of the price until the seller gives him proper security; but it is no good ground on which to rest a claim for rescission. Smith v. Roberts, 12 Mart. (O. S.) 433; Herriman v. Mulhollan, 1 Mart. (N. S.) 605; Wrinkle v. Tyler, 3 Mart. (N. S.) 111; Denis v. Clague's Syndics, 7 Mart. (N. S.) 95."

It is also stated in Rousseau v. Tête, above cited, that—

"It is true that in the case of Pontchartrain Railroad Co. v. Durel, 6 La. 484, this court held that, when the vendor sells property at public auction without title to a portion of it, the vendee, to whom the adjudication is made, cannot be required to complete the sale and accept security, as the buyer is entitled to have all and every part of what he bought; but this decision was based on the ground that article 2535 [2557] of the Civil Code, which only authorizes the vendee, fearful of eviction, to withhold the price until he receives security, applies to a buyer in possession who

has accepted the sale, and not to one who discovers before he accepts a deed or possession that the vendor sold him what belonged to another.

"But where, as in this case, the purchaser has been in possession for more than two years, under a title which, however defective, he thought proper to accept, and under which he may never be disturbed, he has, in our opinion, no claim to rescission, and can only ask to be protected or secured against a possible eviction at a future time." Page 473.

The above decision is on all fours with the case at bar.

The jurisprudence as to the issue here involved was reviewed in Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273. It appeared in that case that the defendant never had any title at all to the tract in dispute, and therefore had no ownership to transfer to the plaintiff, and, further, that there was a paramount, outstanding, legal title to the entire property in the Hanson Lumber Company. The court correctly held in the Bonvillain Case that it was a sale by defendant to plaintiff of a thing belonging to another person and was null, and that in such a case the purchaser incurs no obligation to pay the price, and may sue to annul the sale and recover the price paid at any time, though he may not have been actually evicted or disturbed in his possession by the true owner.

The decision in the Bonvillain Case has also been approved by this court in Kuhn v. Breard, 151 La. 546, 92 So. 52, in which the proper distinction is made between outstanding, perfect titles, and mere possible and defective titles. The case of Rousseau v. Tête. 6 Rob. 471, cited in this opinion, is also quoted with approval in the more recent case of Kuhn v. Breard.

The plaintiff cannot have the sale rescinded in this case, but is entitled to demand from defendant security according to law against possible eviction.

While defendant should recover the unpaid portion of the purchase price, with attorney's fees, on his reconventional demand, bond with good and solvent sureties must be exacted of him, with stay of execution of the judgment in his favor, until such bond and security in favor of plaintiff has been duly executed and delivered to her by defendant. C. C. art. 2557; Jennings-Heywood Oil Syndicate v. Home Oil & D. Co., 113 La. 386, 37 So. 1.

As plaintiff cannot demand a rescission of the sale, she is not entitled to the return of the entire price. It follows, therefore, that security ought to be given by defendant for one-half of the purchase price of $4,000, if plaintiff, or her heirs, or assigns are evicted by the railroad company as to one-half interest in the property, and that additional security should be given by defendant in the sum of $500 to protect plaintiff, her heirs, and assigns against possible eviction as to the one-eighth interest of the interdict, Mrs. Ella Adams Elder, conveyed by her through her curator to her coheirs.

[5] It is true that neither party has asked in the pleadings that this disposition of the case be made. However, it is well settled that such disposition may be made. Jennings-Heywood Oil Syndicate v. Home Oil & D. Co., 113 La. 386, 37 So. 1; Smith v. Corcoran, 7 La. 50; Carson v. Dwight, 5 Rob. 484; McDonald v. Vaughan, 14 La. Ann. 716.

There was judgment in the lower court in favor of plaintiff, annulling and setting aside the deed from defendant to plaintiff, and restoring to plaintiff the purchase price paid by her to defendant.

The judgment also awarded to plaintiff the sum of $212.85 for taxes and improvements placed on the property, and annulled and canceled the two mortgage notes upon which defendant has sued in reconvention in this case.

There was also judgment in favor of defendant in the full sum of $15 per month

rental on said property beginning February 18, 1920, based upon an alternative demand of defendant, in the event of the rescission of the sale.

In our opinion this judgment is erroneous.

It is therefore ordered that our former decree, affirming the judgment of the lower court, be set aside. It is now ordered that the judgment appealed from be reversed and annulled.

It is further ordered that there be judgment in favor of defendant on his reconventional demand and against plaintiff in the full sum of $2,000, with 8 per cent. per annum interest on said amount from February 16, 1920, until paid, and 10 per cent. additional as attorney's fees, subject to a credit of $500, paid on March 13, 1922, with full recognition of defendant's special mortgage and vendor's lien and privilege on lots 3, 4, 5, 6, 7, 8, 9, and 10 of block 9, in the town site of Hosston, La., less one plot of land 40'x50' off the south end of lot 7 of block 9, in the town site of Hosston, as more clearly shown by warranty deed recorded in Conveyance Book 143, p. 325, of the recorder's office of Caddo parish, La.

It is further ordered that said property be sold by the sheriff of Caddo parish, La., after due advertisement, without appraisement, at public auction, and for cash to pay and satisfy this judgment, and that defendant be paid out of the proceeds of such sale the amount of this judgment, in principal, interest, attorney's fees, and cost, by preference and priority over all other persons. It is further ordered that defendant execute bond with good and solvent sureties in favor of plaintiff, her heirs, and assigns in the sum of $2,000, conditioned that defendant shall pay to plaintiff, her heirs, or assigns said sum, in the event that plaintiff, her heirs, or assigns are evicted by the Texarkana, Shreveport & Natchez Railroad Company, or its successors or assigns, as to one-half interest in the property herein described, purchased by said railroad company from J. M. Hoss December 8, 1898; and conditioned also that defendant shall pay to plaintiff, her heirs, or assigns the additional sum of $500, in the event that plaintiff, her heirs or assigns are evicted as to one-eighth interest in said property owned by the interdict, Mrs. Ella Adams Elder, and conveyed by her, through her curator, April 23, 1923, to her coheirs, under judgment and order of the First judicial district court for the parish of Caddo, state of Louisiana.

It is further ordered that the execution of the judgment rendered herein in favor of defendant on his reconventional demand be stayed, until the bond which defendant has been ordered herein to execute and deliver to plaintiff shall have been so executed and delivered to her by defendant.

It is further ordered that plaintiff's demand for the rescission of the sale in this case and the return of the purchase price be rejected, at her cost in both courts.

The right is reserved to plaintiff to apply for a rehearing.

ROGERS, J., dissents, adhering to the views expressed in the original opinion.

On Application for Further Rehearing.

PER CURIAM. [6] As plaintiff was not in default at the time, our decree is amended, so as to reject the demand of defendant in reconvention for attorney's fees, and the application for rehearing otherwise is refused.

OVERTON and ROGERS, JJ., dissent from refusal to grant a rehearing.