| | | |
|---|---|---|
| HEIRS OF JOHN BECKWITH LLC, PRICE HEIRS LLC, JAMES M. FOSTER TRUST, LINDA PRICE ELLZEY, JOHN V. PRICE, RICHARD F. PRICE, JR., SUSAN HURTH PRICE, BECKWITH LANDS, LLC | * | NO. 2020-CA-0476 |
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |
| VERSUS | * * * * * * * | |
| NATHAN SIMS AND BRAILLE INSTITUTE OF AMERICA, INC. | | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 64-725, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Steven M. Spiegel
STEVEN M. SPIEGEL, APLC
381 Highway 21, Suite 205
Madisonville, LA 70447
        COUNSEL FOR PLAINTIFF/APPELLEE


Amos J. Cormier, III
LAW OFFICES OF AMOS CORMIER, LLC
P. O. Box 7280
Belle Chasse, LA 70037
        COUNSEL FOR DEFENDANT/APPELLANT


**AFFIRMED**

**MARCH 10, 2021**

*DLD*
*JFM*
*DNA*

This is an action seeking to establish the ownership of immovable property located in Plaquemines Parish. From a judgment finding that the property at issue is owned by the plaintiffs, the Heirs of John Beckwith, L.L.C.; the Price Heirs, L.L.C.; James M. Foster Trust; Linda Price Ellzey; John V. Price; Richard F. Price, Jr.; Susan Hurth Price; Beckwith Lands, L.L.C.; and the Braille Institute of America, Inc. (collectively referred to as "Plaintiffs"), the defendant, Nathan Sims has taken this appeal.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 15, 2018, Plaintiffs filed this action against Nathan Sims by way of a Petition to be Recognized as Owners of Immovable Property ("Petition"),

---

[1] We note that the Braille Institute of America, Inc. ("BIA") is not a plaintiff in this matter. BIA was named as a nominal defendant in this action. A nominal party is " '[a] party to an action who has no control over it and no financial interest in its outcome; ... a party who has some immaterial interest in the subject matter of a lawsuit and who will not be affected by an judgment, but who is nonetheless joined in the lawsuit to avoid procedural defects.' " *Tipton v. Campbell*, 08-0139, pp. 30-31 (La. App. 4 Cir. 9/24/08), 996 So.2d 27, 47 (quoting Bryan A. Garner, *Black's Law Dictionary*, 1154 (8th ed 2004). Although, technically, BIA is a "nominal defendant" in this action, for purposes of this appeal, we treat BIA as a plaintiff and it is included in the reference to "Plaintiffs" because the judgment at issue affects its rights in the same manner as the other plaintiffs.

1

originally alleging that they are owners in indivision of a 95% interest in property located in Plaquemines Parish.[2] The Petition was amended by a supplemental and amending petition, filed on January 2, 2019, before any defendant filed an answer. The amending petition alleges that the Plaintiffs are the owners in indivision of "[a]n undivided one-hundred percent (100%) interest in 10 acres, being the North 10 acres of the Southwest Quarter of Section 19, Township 19 South, Range 18 East, in Plaquemines Parish, Louisiana."

Named as defendants in this action are Nathan Sims and Ethel Jones. The Petition, as amended, alleges that Plaintiffs and the BIA are in possession of the property. However, Mr. Sims and Ms. Jones asserted a claim of ownership in the property adverse to the Plaintiffs, as evidenced by filings of documents into the conveyance records. Mr. Sims filed documentation purporting to reflect his acquisition of the 95% interest in the property at a tax sale in 1993. A Tax Deed reflecting that sale was filed into the conveyance records on June 25, 1993. Ms. Jones filed documentation purporting to reflect her acquisition of a 5% interest in the property through a tax sale in 1992. A Tax Deed reflecting that sale was filed in the conveyance records on June 30, 1992.

According to the Petition, John Beckwith purchased the property from the State of Louisiana on November 4, 1874. Plaintiffs allege to be the successors-in-

---

[2] The property was described in the Petition as follows:

> . . . 10 acres, being the North 10 acres of the Southwest Quarter of Section 19, Township 19 South, Range 18 East, in Plaquemines Parish, Louisiana, being the same property purported to have been acquired by Nathan Sims by means of that certain Tax Deed dated June 25, 2993, and recorded in Book 808, Page 580, under File Number 1993-00000091, in the Plaquemines Parish Clerk of Court's office, including any interest whatsoever in and to Section 19, Township 19 South, Range 18 East, in Plaquemines Parish Louisiana.

interest to the property and attached to their Petition various documents, including the following; (1) a Sale of Land of numerous properties at an October 29, 1910 public auction to Millard C. Baker, recorded on April 20, 1911; (2) a handwritten document described in the Petition as a February 6, 1905 conveyance of land from the State of Louisiana to the Board of Commissioners of the Grand Prairie Levee District ("GPLD");[3] (3) a May 12, 1911 Sale of Land by Millard C. Baker to the Plaquemines Land Company;[4] (4) a November 4, 1874 Patent reflecting that the State of Louisiana transferred property to John Beckwith, described as the whole of Section 19, Township 19 South, Range 18 East; (5) a February 1, 1938 Cash Deed transferring an ownership interest in the property from the Plaquemines Land Company to Susan Brister; and (6) a December 27, 1973 Cash Sale of the property from Ms. Brister to William A. Hardin.

After the trial court denied several exceptions filed by Mr. Sims, the Plaintiffs moved for summary judgment, seeking a judgment recognizing their 100% ownership of the property and an order recording the judgment so as to remove any cloud on the title of the property. By judgment dated January 29, 2020, the trial court granted the summary judgment, recognizing the Plaintiffs as the owners of the property in their respective percentages of ownership. The trial

[3] The Petition states that the date of this document is January 18, 1905; it was recorded on February 6, 1905. The handwritten document in the record is timeworn and difficult to decipher. Plaintiffs contend that the document neither mentions the property at issue in this case nor conveys any part of the property to the GPLD. Although we are unable to fully read this document, this inability is of no consequence. As discussed more fully herein, whether the 1905 document purported to transfer that property to the GPLD, we agree with Plaintiffs that, because the property was already titled to John Beckwith at the time the State transferred property to the newly-created GPLD, the property at issue was not, and could not, be transferred by the State to the GPLD. It follows, therefore, that GPLD did not ever own the property and was without legal authority to transfer the property to others.

[4] This document, too, is largely illegible.

court issued Reasons for Judgment on the same date. Mr. Sims timely filed a motion for a suspensive appeal of this judgment.[5]

## DISCUSSION

The ultimate issue in this appeal is a determination of the ownership of the property and whether issues of material fact remain for which the summary judgment determination of ownership was improper. The trial court found no such factual issues in dispute, granting summary judgment in Plaintiff's favor, which is the primary focus of this appeal.

In addition to the propriety of the grant of summary judgment, Mr. Sims raises numerous issues and correlating assignments of error relating to the trial court's denial of several exceptions.[6] We first consider the trial court's denial of Mr. Sims' various exceptions.[7]

### *Dilatory exception of vagueness or ambiguity of the petition*

Louisiana Code of Civil Procedure article 891 A requires that a petition "contain a short, clear, and concise statement of all causes of action arising out of, and of the material facts of, the transaction or occurrence that is the subject matter of the litigation." The sufficiency of the petition to clearly articulate the facts underlying the claims asserted therein is tested by a dilatory exception of vagueness or ambiguity, pursuant to La. C.C.P. art. 926 A(5).

---

[5] There is nothing in the record demonstrating that Ms. Jones filed a motion to appeal the trial court's January 29, 2020 judgment. Accordingly, the judgment is final as to her claims.

[6] All of Mr. Sims' exceptions were heard by the trial court on June 27, 2019 and denied by judgment dated June 28, 2019. The trial court issued reasons for judgment as to its denial of each exception. Although Mr. Sims did not seek review of the denial of any of the exceptions with this Court, this Court may consider interlocutory judgments as part of an unrestricted appeal from a final judgment. *McBride v. Lichtenstein*, 17-0715, p. 27 (La. App. 4 Cir. 12/5/18), 260 So.3d 658, 675, *writ denied*, 19-0023 (La. 2/25/19), 266 So.3d 298.

[7] In addition to the exceptions discussed herein, Mr. Sims raised the peremptory exception of *res judicata* in the trial court, which was denied. He has not assigned as error the trial court's denial of this exception.

Our jurisprudence is clear that the purpose of the exception of vagueness "is to compel the plaintiff to amplify and make more definite his claim in order that defendant may properly prepare his defense." *Williams v. State*, 34,691, p. 4 (La. App. 2 Cir. 5/9/01), 786 So.2d 927, 930 (quoting *City of Gretna v. Gulf Distilling Corporation*, 21 So.2d 884, 889 (La. 1945)). It is equally clear that "the exception does not permit the defendant to demand exactitude and detail beyond what is necessary for the above purposes;" thus, "[a]n exception of vagueness will be denied if the petition fairly informs the defendant of the nature of the cause of action and includes sufficient particulars for the defendant to prepare a defense." *Joseph v. Wasserman*, 16-0528, pp. 5-6 (La. App. 4 Cir. 12/7/16), 206 So.3d 970, 973 (citation omitted).

We review a trial court's denial of an exception of vagueness under a manifest error standard as this judgment is based on factual determinations. *An Erny Girl, L.L.C. v. BCNO 4 L.L.C.*, 18-0360, p. 5 (La. App. 4 Cir. 9/26/18), 257 So.3d 212, 218.

Mr. Sims maintains that the Petition is impermissibly vague for a number of reasons including the following: it failed to specify that the Plaintiffs' claim arose out of either an alleged mistake or by fraud with respect to the transfer of title culminating in Mr. Sims' alleged ownership of the property; it failed to allege the invalidity of the 1993 tax sale by which Mr. Sims purportedly obtained ownership of the property; it failed to assert a claim for the nullification of the 1993 tax sale; and it failed to inform him of the type of action being pursued (petitory pursuant to La. C.C.P. art. 3651 vs. possessory pursuant to La. C.C.P. art. 3655).[8]

---

[8] In this regard, Mr. Sims argues that this "ambiguity" is further evidenced by the Plaintiffs' "judicial confession" in the original petition that they were not "in possession" of the property at

5

The trial court denied the exception of vagueness and ambiguity of the Petition, assigning the reason that the Petition "clearly assert[ed] a declaratory judgment action under [La. C.C.P. art.] 3654." In support of this finding, the trial court cited *Decatur-St. Louis Combined Equity Properties, Inc. Venture v. Abercrombie*, 421 So.2d 253, 253-54 (La. App. 4 Cir. 1982), wherein this Court rejected the contention that a plaintiff cannot maintain both a petitory and a possessory action, finding that the plaintiff was asserting "a declaratory judgment action allowed under [La.] C.C.P. 3654."

Article 3654, entitled "Proof of title in action for declaratory judgment . . .," permits a party to seek a declaratory judgment "[w]hen the issue of ownership of immovable property or of a real right therein is presented." While Plaintiffs did not entitle their lawsuit as a "Petition for a Declaratory Judgment" or use the term "declaratory judgment," it is clear that the suit seeks declaratory relief. In their prayer for relief, Plaintiffs expressly request a judgment recognizing them as owners in indivision of the property. "[E]very pleading must be construed as to do substantial justice [. . . ] Accordingly, courts look beyond mere headings and

issue, although they "contradicted" this statement in their amending petition by asserting that they are in possession in the property. He notes that the issue of possession is relevant insofar as La. C.C.P. art. 3657 provides that a plaintiff "may not cumulate the petitory and the possessory actions in the same suit or plead them in the alternative, and when he does so he waives the possessory action." We find no merit to this contention. First, the original petition did not state only that Plaintiffs were not in possession of the property; to the contrary, it stated that neither Plaintiffs nor Mr. Sims was in possession of it. Second, a plaintiff may amend his petition at any time before an answer is filed. *See* La. C.C.P. art. 1151. Third, even if the allegation that Plaintiffs were not in possession of the property was deemed a "judicial confession" (i.e., "a party's explicit admission of an adverse factual element [that] has the effect of waiving evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Indus., Inc.*, 04-2894 (La. 11/29/05), 917 So.2d 424, 429), it is clear that "a party may amend the pleadings to cure any errors or omissions absent a showing that the adverse party was misled or deceived." *Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee*, 05-1491, p. 5 (La. App. 4 Cir. 7/12/06), 936 So.2d 853, 857. *See also Giron v. Hous. Auth. of City of Opelousas*, 393 So.2d 1267, 1270 (La. 1981)("There is no prohibition against a plaintiff amending his petition with leave of court to alter the substance of his demand after filing of answer"). In their amended petition, Plaintiffs correct the allegation to make clear that they, and the BIA, "are in possession of the [p]roperty."

6

terminology used on or in pleadings to determine the circumstances and the true nature of the suit." *Cambrie Celeste LLC v. Starboard Mgmt., LLC*, 16-1318, p. 8 (La. App. 4 Cir. 11/6/17), 231 So.3d 79, 84, *writ denied*, 17-2041 (La. 2/2/18), 235 So.3d 1110. *See also Parker v. Machen*, 567 So.2d 739, 743 (La. App. 2 Cir 1990)(where the "action was closely akin to one for declaratory judgment," the judgment "understood as declarative of the ownership of the land, was appropriate under the broad relief contemplated by art. 3654.").

A review of the Petition, as amended, reflects that it clearly sets forth the Plaintiffs' claims with sufficient particularities to inform Mr. Sims of the nature of those claims to allow him to prepare his defenses. We find no error in the trial court's denial of the dilatory exception of vagueness or ambiguity of the petition.

### *No cause of action*

Mr. Sims combines his argument on the exception of vagueness and ambiguity with the exception of no cause of action. The only argument he makes which is exclusive to the exception of no cause of action is that "La. R.S. 47:2286 does not permit a Tax Sale to be nullified without an Action of Nullity being filed" and thus, "the trial court erred in denying Mr. Sims' Exception of No Cause of Action." In denying this exception, the trial court found that "the petition and the supplemental and amending petition have set forth a cause of action for a declaratory judgment."

We note, at the outset, that the trial court's determination that the plaintiffs seek a declaratory judgment is consistent with the introductory comments to Title II, Real Actions, under Book 7, "Special Proceedings" of the Code of Civil Procedure, which specifically indicate that "[t]he ownership of immovables may

7

now be adjudicated in an action for a declaratory judgment." The comments then refer to La. C.C.P. art. 3654, discussed more fully below.

Distinguished from the exception of vagueness, an exception of no cause of action is designed "to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition." *An Erny Girl, L.L.C.*, 18-0360, p. 6, 257 So.3d at 218 (citation omitted). "An exception of no cause of action should be granted only when it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." *Id.* (citation omitted). We review the denial of an exception of no cause of action *de novo* because the question of whether a petition states a cause of action is a question of law. *Ordoyne v. Ordoyne*, 07-0235, p. 4 (La. App. 4 Cir. 4/2/08), 982 So.2d 899, 902

Plaintiffs contend, and we agree, that the Petition states a cause of action for a declaratory judgment as to the ownership of the property. As we have noted herein, La. C.C.P. art. 3654 is a manner by which the ownership of property may be determined. Under this article, the trial court is to determine:

> (1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or
>
> (2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.

La. C.C.P. art. 3654.

Mr. Sims' assertion that Plaintiffs failed to state of cause of action for the nullity of the tax sale to him is misplaced. Article 3654 clearly permits Plaintiffs

to seek a determination of the ownership of the property. Plaintiffs were not required, as Mr. Sims suggests, to file either a petitory or possessory action against him. As the trial court noted, in *Gros v. Boisvert Farms, LLC*, 13-0016, p. 6 (La. App. 1 Cir. 2/27/14), 142 So.3d 991, 995, the First Circuit explained that there are "three different actions through which one can assert ownership or possession of real property," one of which is the declaratory judgment action. "A plaintiff who is in possession of the property at issue can bring an action for declaratory judgment, thereby raising issues of possession and ownership in the same action." *Id.*

Similarly, it is clear that a party "who claims to be the owner of an immovable may bring an action to confirm his title." *Parker*, 567 So.2d at 742. In such an action, an action to quiet title, a plaintiff must allege (and prove):

1. Claim of ownership;

2. Existence of clouds;

3. Description of property; and

4. Prayer for cancellation of the clouds.

*Id.* at pp. 742-43. The *Parker* Court found that the plaintiff was

> . . . entitled to a declaratory judgment to resolve the issue of 'ownership of immovable property or of a real right therein[.] LSA–C.C.P. art. 3654. The action is available even to a plaintiff who, like the Parkers, is in possession. *Liner v. Terrebonne Parish Sch. Bd.*, 519 So.2d 777 (La. App. 1st Cir.1987), *writ denied*, 521 So.2d 1173 (La.1988), *cert. denied*, 488 U.S. 827, 109 S. Ct. 79, 102 L.Ed.2d 55 (1988). The Parkers' action was closely akin to one for declaratory judgment. The instant judgment, understood as declarative of the ownership of the land, was appropriate under the broad relief contemplated by [La. C.C.P.] art. 3654.

*Id.*, 567 So.2d at 743.

This type of lawsuit has also been recognized as an action to remove clouds from a title.[9] See *Verret v. Norwood*, 311 So.2d 86, 89 (La. App. 3 Cir. 1975), where the Court explained:

> The Action to Remove Cloud from Title is a creature of the jurisprudence first recognized in *Lacroix v. Villio*, 123 La. 459, 49 So. 20 (1909). Historically, the necessary allegations to bring this action were that 1) plaintiff claim ownership of the immovable or real right, 2) defendant has recorded an instrument casting a cloud on plaintiff's title, 3) there be a proper description of the property, and 4) plaintiff desires a cancellation of the recorded instrument from the public records.

*See also Papworth v. Truxton Corp.*, 357 So.2d 1198, 1200 (La. App. 4 Cir. 1978)("the *Walmsley* [*v. Pan American Petroleum Corporation*, 244 La. 513, 153 So.2d 375 (1963)] case along with all of the Supreme Court cases . . . created and nurtured the concept of an action to remove cloud from title. . . ."); *Giuffria Realty Co. v. Kathman-Landry, Inc.*, 173 So.2d 329, 333 (La. App. 4 Cir. 1965)("[t]he action to remove cloud from title is, generally speaking, brought by a person who claims ownership of immovable property against another who has recorded an instrument which operates as a cloud on plaintiff's title to obtain a judgment cancelling the recorded instrument from the public records."); *Spencer v. James*,

---

[9] Questions have arisen as to whether Louisiana law still recognizes an action to remove clouds from a title. *See, e.g., Bordelon v. Haas Inv. Co.*, 337 So. 2d 904, 905 (La. App.3 Cir. 1976)("In *Walmsley v. Pan American Petroleum Corporation*, 244 La. 513, 153 So.2d 375 (1963), our Supreme Court held that this action survived enactment of the Code of Civil Procedure in 1960. Although the *Walmsley* decision has been much criticized it has never been overruled."). More recently, the Supreme Court commented on such an action, without clearly stating whether the action is still a viable proceeding, finding, rather, that it was not an available option in that particular instance. *See Todd v. State, Through Dep't of Nat. Res.*, 474 So.2d 430, 435 (La. 1985)("There is apparently some question as to whether the action to remove a cloud from title survived the 1960 enactment of the Code of Civil Procedure. Although this Court in *Walmsley v. Pan American Petroleum Corp.*, 244 La. 513, 153 So.2d 375 (1963), relied on introductory remarks before Title II, Real Actions, to conclude that the action was still viable, the decision has been much criticized. *Bordelon v. Haas Investment Co.*, 337 So.2d 904, 905 (La. App. 3rd Cir.1976) (citing *Verret v. Norwood*, 311 So.2d 86 (La. App. 3rd Cir.1975)). Furthermore, the action, if still valid, is generally brought by one who claims ownership of immovable property against another who has recorded an instrument which operates as a cloud on plaintiff's title. The desired judgment is the cancellation of the recorded instrument from the public records.").

42,168, p. 12 (La. App. 2 Cir. 5/9/07), 955 So.2d 1287, 1292-93 ("[a]n action to remove cloud from title or to quiet title may be used by a person claiming ownership of immovable property or of a real right against another who has recorded an instrument which operates as a cloud on his title. Louisiana jurisprudence still recognizes the action to quiet title.")(internal citation omitted).[10]

In the instant matter, the Plaintiffs have plead all of the elements of a claim for declaratory judgment or the removal of a cloud from their title. Thus, we find that Plaintiffs have clearly set forth a cause of action in their Petition. The trial court properly overruled Mr. Sims' exception of no cause of action.

### *Failure to join parties*

Next, Mr. Sims contends that the trial court erred in denying his exception of failure to join parties to the action. More specifically, Mr. Sims argues that the Plaquemines Parish Sheriff's Office, the Plaquemines Parish Assessor, and the Plaquemines Parish Government (as successor of the GPLD) were parties indispensable to a proper adjudication of this matter, particularly as it relates to his

---

[10] We note that the Supreme Court, in *Todd v. State, Through Dep't of Nat. Res.*, 474 So.2d 430, 436-37 (La. 1985), indicated:

> In an action for a declaratory judgment or a concursus, expropriation, or similar proceeding, La.Code Civ.Pro.Ann. art. 3654 provides that the issue of ownership is presented, and that the judgment is rendered in favor of the party either entitled to the possession of immovable property in a possessory action, unless the adverse party proves title, or in favor of the party who proves better title, if neither is entitled to possession.

> ***

> However, since the declaratory judgment would involve the issue of ownership of immovable property, the burden of proof would be on the adverse party to the plaintiff in possession (namely the state) to make out its title, just as is the case in the possessory action.

As discussed more fully herein, both parties have title to the property, and both claim to also have possession of the property. The ultimate question presented does not focus on who has the right to possess, but whether Mr. Sims has established his plea of acquisitive prescription.

11

defense "against another's alleged fraud or error." That alleged error pertains to a 1905 sale of the property by the GPLD, which set in action several transfers of the property, the last of which was the tax sale to Mr. Sims in 1993. Mr. Sims maintains that the Plaintiffs alleged fraud or mistake by the Plaquemines Parish Government in that 1905 sale. He further maintains that the Plaquemines Parish Assessor and Sheriff's Office should be parties to this action for their involvement in the assessment of the property over the years and, ultimately, the tax sale at which Mr. Sims purportedly purchased the property.

The trial court considered the merits of Mr. Sims' argument and rejected it, finding "no basis in the record to conclude that complete relief cannot be accorded among those already parties." We agree.

The objections which may be raised through the dilatory exception include the improper joinder (or non-joinder) of parties. La. C.C.P. art. 926 A(7). La. C.C.P. art. 641 A requires the joinder of parties "in the action when . . . [i]n his absence complete relief cannot be accorded among those already parties" or when "[h]e claims an interest relating to the subject matter of the action. . . ." As this Court explained in *1205 St. Charles Condo. Assoc. Inc. v. Abel*, 18-0566, p. 10 (La. App. 4 Cir. 12/19/18), 262 So.3d 919, 926, "[t]he articles on joinder formerly discussed 'necessary' and 'indispensable' parties, but as amended in 1995, these terms were removed and replaced with 'the concept of 'joinder of parties needed for just adjudication.' " (internal citation omitted). As a question of law, a judgment on an exception of non-joinder of a party is reviewed *de novo*. *Ryan Gootee Gen. Contractors, LLC v. Plaquemines Par. Sch. Bd. & One Const., Inc.*, 15-325, p. 11 (La. App. 5 Cir. 11/19/15), 180 So.3d 588, 596.

12

In this matter, the only rights to be determined are the ownership rights to the property pursuant to La. C.C.P. art. 3654. Thus, the only parties who have an interest in this determination are the parties to this action. None of the parties Mr. Sims contends should be made parties to this action have an interest the determination of who owns the property and, as such, they are not "parties needed for [a] just adjudication" of the issues in this case.[11] Therefore, we find that the joinder of the Plaquemines Parish Sheriff's Office, the Plaquemines Parish Assessor and the Plaquemines Parish Government (as successor of the GPLD) in this case is not required by La. C.C.P. 641. The relief requested in this lawsuit can be accorded among those already parties to the suit.

We find no error in the trial court's denial of the exception of non-joinder of parties.

### *Summary Judgment and Prescription/Peremption*

We address the motion for summary judgment and Mr. Sims' exception of prescription together as they raise correlated issues.

At the outset, we address the Plaintiffs' contention that the trial court erred in allowing Mr. Sims' late-filed opposition to their motion for summary judgment, along with his affidavit, in the record of this matter. In reviewing the transcript of the hearing on the motion for summary judgment, it is unclear that the trial court allowed the opposition to be filed into the record. Although the trial court allowed oral argument and allowed Mr. Sims' affidavit into the record, the following colloquy suggests that the opposition memorandum was not allowed:

---

[11] Whether Mr. Sims has any recourse as a result of the tax sale to him is not a part of this litigation.

AMOS CORMIER III: . . . -- so, is that -- is Your Honor going to allow our opposition along with the exhibits into the record?

THE COURT: Well, it's in -- it's filed in the record. I'm allowing you oral argument.

AMOS CORMIER III: Into evidence, I should say.

THE COURT: I'll allow the affidavit.

AMOS CORMIER III: Into evidence? Thank you. For Mr. Sims.

SHANE LANDRY: Well, it's all attached.

THE COURT: That -- that he did the things that he did is part of the makeup of this case.

AMOS CORMIER III: Thank you. Your Honor.

And just -- so, the opposition filed by opposing counsel that we are trying to exclude, opposition was denied. Correct?[12]

THE COURT: In essence. Thank you.

AMOS CORMIER III: Thank you.

There is no dispute that Mr. Sims' opposition memorandum was untimely. After Plaintiffs filed their motion for summary judgment, the trial court set the hearing date for January 9, 2020. Under La. C.C.P. art. 966 B(2), "[a]ny opposition to the motion and all documents in support of the opposition *shall* be filed . . . not less than fifteen days prior to the hearing on the motion." (Emphasis added). The opposition memorandum was filed in this matter on December 30, 2020 and was, thus, clearly untimely.

---

[12] The confusion in this colloquy is that this question was attributed to counsel for Mr. Sims by the court reporter who transcribed the hearing. Based on the nature of the question, it is likely that this question, as well as the statement thereafter thanking the trial court, were made by counsel for the Plaintiffs, and not Mr. Cormier.

After the amendments to the summary judgment procedure, our jurisprudence has held that a trial court errs in allowing late-filed affidavits and oppositions to summary judgment to be accepted into a record. *See*, *e.g.*, *Shaw A/C & Elec., LLC v. Liberty Bank & Tr. Co.*, 18-1101, p. 1 (La. 11/14/18), 259 So.3d 330 ("[t]he district court abused its discretion in denying plaintiff's motion to exclude defendant's untimely opposition"); *Madere v. Collins*, 17-0723 (La. App. 4 Cir. 3/28/18), 241 So.3d 1143, 1145, *writ denied*, 18-0678 (La. 9/14/18), 252 So.3d 478 (where this Court affirmed the trial court's allowance of a late filed supplemental opposition to a motion for summary judgment and attached affidavit, the Supreme Court "granted the writ and decreed as follows: 'Granted. The district court abused its discretion.' "). Accordingly, we find that the trial court erred in allowing Mr. Sims' affidavit to be considered in the summary judgment hearing.[13] Notwithstanding, the Plaintiffs were still required to meet their burden of proof in their motion for summary judgment.

The Code of Civil Procedure expressly provides that the summary judgment procedure "is favored" and "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966 A(2).

It is well-settled that "[a] court must grant a motion for summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.' " *Whitney Bank v. Carbine,* 19-1070, p. 7 (La. App. 4 Cir. 6/24/20), 302 So.3d 115, 120

---

[13] Although the opposition memorandum cannot be considered in this appeal, Plaintiffs address the issues raised by Mr. Sims and accordingly, we do not find any prejudice to Mr. Sims in disallowing his opposition memorandum.

(quoting *Murphy v. Savannah*, 18-0991, p. 7 (La. 5/8/19), 282 So.3d 1034, 1038).

It is equally well-settled that:

> [t]he initial burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material factual issue remains. The failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.

*Jones v. Estate of Santiago*, 03-1424, p. 5 (La. 4/14/04), 870 So.2d 1002, 1006

An appellate court is to review the grant or denial of a motion for summary judgment *de novo* using " 'the same criteria governing the trial court's consideration of whether summary judgment is appropriate.' " *Weddborn v. Doe*, 15-1088, p. 4 (La. App. 4 Cir. 5/4/16), 194 So.3d 80, 84 (quoting *Wilson v. Calamia Constr. Co.*, 11-0639, p. 3 (La. App. 4 Cir. 9/28/11), 74 So.3d 1198, 1200). The summary judgment procedure can be an appropriate manner by which disputes in property ownership are resolved. *See*, *e.g.*, S*tow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015, p. 1 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 74, *writ denied*, 20-00870 (La. 10/14/20), 302 So. 3d 1120; *Hooper v. Hero Lands Co.*, 15-0929 (La. App. 4 Cir. 3/30/16), 216 So.3d 965; *Plaquemines Par. Gov't v. Schenck*, 15-0127, pp. 3-4 (La. App. 4 Cir. 12/9/15), 182 So.3d 1122, 1124; *Chauvin v. Shell Oil Co.*, 16-609 (La. App. 5 Cir. 10/25/17), 231 So.3d 903, 905, *writ denied*, 17-1985 (La. 1/29/18), 233 So.3d 607 *Blaise v. Smith*, 01-1512 (La. App. 3 Cir. 3/6/02), 809 So.2d 1253, 1254.

This lawsuit is neither a true petitory action nor a true possessory action. A petitory action is "one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another

who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership." La. C.C.P. art. 3651. A possessory action, on the other hand, "is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. C.C.P. art. 3655. Here, the Plaintiffs, while asserting that they are in possession of the property in question, do not seek to be "restored to the possession" of property from which they have been evicted, but rather, to be declared the owner of the property, as allowed by La. C.C.P. art. 3654.

The facts of this matter are not in serious dispute. The Plaintiffs claim ownership of the property through an unbroken chain of ownership dating back to the 1874 Patent, by which the State of Louisiana transferred the property to their ancestor-in-title, John Beckwith. A review of that 1874 Patent reflects that it did, indeed, "give, grant and sell" to John Beckwith numerous properties, including "all of Sec's 19, 20, . . . ." and "Township 19 south, range 18 east." Plaintiffs attached to their summary judgment motion voluminous documents (some 600 pages) to support their claims of ownership and their chain of title.[14]

---

[14] The documents were accompanied by the affidavit of Kyle T. Marks, the President of the Heirs of John Beckwith, LLC, who has thirty years of experience as a petroleum landman. Mr. Marks attested to his review of the documents and testified that they show a chain of title, tracing title "back to the sovereign" and indicating that Plaintiffs and BIA "have ownership of the entirety" of the property in dispute. No countervailing affidavits were introduced to refute the chain of title as represented by the documents. Nor does the record reflect any other claims of ownership of the property. Accordingly, although Mr. Sims contends that there is a "break" in this chain by virtue of the sale of the property by the State to the GPLD and the tax sale to him, this does not negate the validity of Plaintiffs' chain of title. Because there is no countervailing affidavit or other claim to the property, we accept the Plaintiffs' chain of title as accurate and correct.

Mr. Sims, on the other hand, claims ownership of the property through his purchase of it at the 1993 tax sale. Title to this property, according to Mr. Sims' chain of title, commenced with the 1911 sale of the property to Millard Baker. Mr. Sims did not file a reconventional demand to assert a claim of ownership of the property. At this stage of the litigation, Mr. Sims relies on his position that he has acquired the property through good faith acquisitive prescription of ten years.

In their motion for summary judgment, Plaintiffs address Mr. Sims' position that the initial transfer of the property by the State to the GPLD was valid and thus, each subsequent transfer, culminating in the tax sale to him, was likewise valid. We, thus, consider this issue first.

The starting point of Mr. Sims' claim to the property is the 1905 sale of the property by the State to the GPLD. On October 29, 1910, Frank M. Mevers, the then-sheriff of Plaquemines Parish, sold the property at public auction and it was transferred from the Board of Commissioners of the GPLD to Millard C. Baker.[15] A review of that document, a copy of which was attached to the Petition and the motion for summary judgment, reflects that it transferred numerous properties to Mr. Baker, including both the southeast and southwest quarters of Section 19, Township 19 south, range 18 east, the property at issue in this case. The Sale of Land, recorded on April 20, 1911, expressly states that the sale of the property was made "in conformity with Act 215 of 1908." Act 215 allowed for the "purchase [of] lands belonging to the State of Louisiana, or any of the levee boards. . . ."[16]

---

[15] The GPLD's purported ownership of the property was derived from the 1905 sale of the property to it from the State.

[16] Shortly thereafter, Mr. Baker sold the property to the Plaquemine Land Company. There were subsequent transfers of the property and, in 1973, the property was transferred to William Hardin. His failure to pay taxes in 1991 and 1992 resulted in the tax sale to Mr. Sims.

The GPLD was created in 1898 by Act 24 and it "provided for the transfer to it of certain State-owned lands embraced within the area of the district thus created." *Richardson & Bass v. Bd. of Levee Comm'rs of Orleans Levee Dist.*, 231 91 So.2d 353, 356 (La. 1955).[17] The express purpose of Act 24 of 1898 and the creation of the GPLD was to "grant certain lands to said Board for levee purposes."[18] *See also Winkler*, 239 So.2d 484, 487 ("[t]hat act [Act 27 of 1904][19] authorized transfer of certain state-owned Lands to the [GPLD] for the purpose of assisting the district in constructing a system of levees.").

Act 24 set forth the boundaries for the GPLD,[20] and provided that:

> . . . in order to additional means to carry out the purposes of this act and to furnish resources to enable said Board [of the GPLD] to assist in developing, establishing and creating a levee system in said District, *all lands now belonging or that may hereafter belong to the State of Louisiana*, and embraced within the limits of the Levee District, as herein constituted, shall be and the same are hereby given, granted, bargained, donated, conveyed, and delivered unto said Board of Commissioners for the [GPLD].

---

[17] The Act creating the GPLD was amended and reenacted in 1924 to set forth that "all lands then belonging to the State," within the levee district, were conveyed to the GPLD. *Id*. at p. 357.

[18] In *DeSambourg v. Bd. of Comm'rs for Grand Prairie Levee Dist.*, 608 So.2d 1100, 1103 (La. App. 4 Cir. 1992), *writ granted*, 614 So.2d 69 (La. 1993), *and aff'd*, 621 So.2d 602 (La. 1993), this Court discussed the origins of the levee systems in Louisiana:

> Before the turn of the 18th century, owners of land located along the Mississippi River began to commence construction of levees to protect their lands from the seasonal ravages of flooding. There was no reimbursement from the state for their expense in making these improvements. However, the burden proved to be too great and the levee districts were created in the late 1800's to construct and maintain the levees in each of their respective levee districts.

[19] Act 27 of 1904 added territory to the GPLD and, like Act 24 of 1898, transferred "all lands now belonging to, or that may hereafter belong to the State of Louisiana."

[20] The boundaries are described in Act 24 as "all the territory contained within the parish of Plaquemines on the left or east bank of the Mississippi river, beginning at the lower line of Bohemia plantation and extending to the upper line of the United States Reservation for Fort St. Philip, and including all lands belong or forming part of the parish of Plaquemines within the said limits."

(Emphasis added). *See also State v. Aucoin*, 20 So.2d 136, 147 (1944)("[i]t is well settled that the acts of the Legislature creating the several levee districts . . . transferr[ed] to the board of commissioners *the lands belonging to the State* within each district. . . .")(Emphasis added); *C.f., State v. Standard Oil Co. of La.*, 113 So. 867, 872 (La. 1927)("[t]he land was transferred to the Caddo levee board by an act of the Legislature, if not by the Act 74 of 1892, creating the levee district, surely by the Act 160 of 1900, extending the limits of the district and conveying to the levee board every character of land *belonging to the state* within the district.")(Emphasis added).

It is clear that Act 24 of 1898 intended that only those lands *then* owned by the State to be transferred to the GPLD. Necessarily, therefore, those lands not owned by the State, *i.e.*, those lands already privately owned, were not transferred to the GPLD.

The property at issue in this case, having been conveyed by the State to Mr. Beckwith in 1874, was never part of, nor owned by, the GPLD. The GPLD was, therefore, wholly without authority to sell that property on October 29, 1910. Even had the 1905 sale from the State to the GPLD included the property at issue in this case,[21] it is clear that the sale would be a nullity; at the time of the creation of the GPLD, the property was privately owned and was not "State-owned lands" subject to transfer to the GPLD. *See also Barrow v. Wilson*, 38 La. Ann. 209, 209 (La. 1886)("The Act of Congress of March 2, 1849, donating swamp lands to Louisiana, did not convey title 'to lands claimed or held by individuals.' ").

---

[21] Again, although we are unable to decipher the document in the record regarding that sale, the Plaintiffs maintain that it did not include this property.

In *Gulf Oil Corp. v. State Mineral Bd.*, 317 So.2d 576, 580 (La. 1974)(on rehearing), the Louisiana Supreme Court considered the ownership of property also purchased by Mr. Sims' ancestor-in-title, Millard C. Baker.[22] As in the instant matter, the purported owners of the property traced their ownership interest to Mr. Baker, who had purchased that property at an October 29, 1910 sheriff's sale from the GPLD. The GPLD issued a deed to him that date and subsequently, on March 4, 1911, the State issued a patent to Mr. Baker for the property. Like the instant matter, the GPLD had acquired the property from the State in 1905. The adverse party to the action was the State, who, along with the private parties, issued mineral leases for the same property to Gulf Oil Corporation.

Like the instant matter, in *Gulf Oil*, the "private claimants . . . trace[d] their title to the land in question to a state patent issued to their predecessor in title under authority of Act No. 24 of 1898 and Act No. 27 of 1904, conveying certain lands from the State to the [GPLD] and empowering the District to dispose of such land as it should deem proper." *Id.* at p. 584.

The Court initially ruled that the patent issued to the plaintiffs was invalid because it had not been signed by Register for the State, nor had it been registered with the State Land Office. On rehearing, the Court considered whether the patent issued to the plaintiffs conclusively established the plaintiffs' ownership of the land, as the State had not sought to annul the patent pursuant to Act No. 62 of 1912. Act 62 set forth a prescriptive period for annulling a patent and provided:

> All suits or proceedings of the State of Louisiana, private corporations, partnerships or persons to vacate and annul

---

[22] The property at issue in this case is described as the "Southwest Quarter (SW 1/4) of Section 26, Township 19 South, Range 18 East in Plaquemines Parish." *Id.*, 317 at p. 580. "The land in question is in the Grand Bay area and is submerged beneath Navigable waterbodies which connect with the Gulf of Mexico." *Id.*

> any patent issued by the State of Louisiana, duly signed by the Governor of the State and the Register of the State Land Office, and of record in the State Land Office, or any transfer of property by any sub-division of the State, shall be brought only within six years of the issuance of patent, provided, that suits to annul patents previously issued shall be brought within six years from the passage of this Act.

*Id*.[23]

The Court ultimately found that the State's failure to institute action within the six year period set forth in Act 62 did not have the effect of vesting ownership in the property given, as discussed more fully below, ownership of the beds of navigable waters are insusceptible of private ownership. That is, "lands which were inalienable because they were not 'public lands' . . . could not be acquired by a mere statute of limitations for there was no title to transfer in the beginning." *Id*. at p. 588. Thus, "Act No. 62 of 1912 did not have the effect of ratifying such absolutely null transfers." *Id*. at p. 592.

The same cannot be said of patents issued to individuals conveying non-public lands. It is clear that the prescriptive period of Act 62 (now, La. R.S. 9:5661) readily applies to the transfer of ownership through patents properly issued by the State. This provision was found to be constitutional[24] and has been applied for the principle that a "patent, duly signed by the Governor and the Register of the State Land Office, bec[omes] unassailable after six years from the day of its issuance by virtue of R.S. 9:5661." *Hill v. Pipes*, 107 So.2d 409, 412 (La. 1958).

---

[23] Act 62 of 1912 was codified in La. R.S. 9:5661 which provides that "[a]ctions, including those by the State of Louisiana, to annul any patent issued by the state, duly signed by the governor and the register of the state land office, and of record in the state land office, are prescribed by six years, reckoning from the day of the issuance of the patent."

[24] *See Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co*., 102 So. 871, 873 (1925).

In the case before us, the record reflects that the 1874 patent issued to John Beckwith was signed by both the Governor and the Register for the State. It therefore became "unassailable" once six years passed from the effective date of Act 62. *See Olin Gas Transmission Corp. v. Harrison*, 132 So.2d 721, 732 (La. App. 1 Cir. 1961)("the State shall have six years from the date of issuance of a patent, or six years from the passage of Act 62 of 1912 within which to sue to have the said patent set aside").

The lack of requisite signatures on the patent at issue in *Gulf Oil* was not the only issue before the Court. The ultimate issue before the Court (the resolution of which also applied to the validity of the patent) concerned the ownership of the beds of navigable water bodies. After reviewing the jurisprudential and legislative history of navigable water bodies, the Court reached the conclusion that "state officials empowered to issue patents had no authority to convey the beds of any navigable waters." *Gulf Oil* at p. 584. Thus, the Court found that the patent issued to Mr. Baker was otherwise invalid because there could be no lawful transfer of beds of navigable bodies, ownership of which rested with the State. The Court noted that Act 62:

> . . . was not intended to ratify the absolutely null conveyances of navigable water bottoms to private individuals and should not be applied as it was in *Price* [*California Co. v. Price*, 74 So.2d 1 (1954)]; rather, we conclude that the legislature intended to do no more by its enactment than cure formal defects in patents that were essentially valid, in that they conveyed alienable property.

*Id*.

The Court quoted, with approval, 21 Tul.L.Rev. 454 at p. 473, which noted that "[t]he statute of limitations [provided in Act 62] is not intended to [c]reate a

23

right of possession (ownership) when there is a total absence of authority for the inception of title; thus, the statute would not confirm title under a patent issued by an administrative official Acting without legislative sanction or authority." *Id*.

The *Gulf Oil* Court further stated:

> This Court, in its opinion on rehearing in *All-State Credit Plan Natchitoches, Inc. v. Ratliff*, 279 So.2d 660 (La.1973), recognized that the capacity of prescription to divest ownership of property is strictly limited. In that case we stated:
>
> '* * * Under our Civil Code, ownership can never be lost by the failure to exercise it—*only by the acquisition of ownership by another through possession sufficient to acquire it through an acquisitive prescription*. La.Civ. Code Art. 496. * * *' 279 So.2d at 666.
>
> Act No. 62 of 1912, by its very nature a remedial or curative statute providing for liberative prescription, could not have vested ownership in private parties by the mere inaction of the true owner, the State. The State could deliver no title to this land. The patentee had acquired nothing which could be liberated from the State under a statute of liberative prescription or peremption.

*Id*. (Emphasis added).

The property at issue in *Gulf Oil* was insusceptible of private ownership and thus, could never be acquired by private individuals. As the *Gulf Oil* Court noted, "lands which were inalienable because they were not 'public lands' . . . could not be acquired by a mere statute of limitations for there was no title to transfer in the beginning. . . . There was no original authority in the State to transfer title and therefore there could be no ratification of any attempt to create title in another." *Id*. at p. 588. The patent, therefore, issued to Mr. Baker, like all "patents conveying state property to private individuals," (*Id*. at p. 592) was deemed a nullity.

The same result was reached in the earlier decision of *Winkler.* In that case, too, the plaintiffs traced their ownership of the property in question to an October 29, 1910 sale of that property from the GPLD to Millard C. Baker and the land at issue was the bed of a navigable water body. After the sale of the property, patents were issued to Mr. Baker in March, 1911.

The *Winkler* Court first found that a 1905 transfer of the property to the GPLD was a nullity insofar as an earlier act (Act 27 of 1904) expressly provided that "all the beds and bottoms of the rivers, bayous, lagoons, lakes, bays, sounds and inlets bordering on or connecting with the Gulf of Mexico, * * * shall be, continue and remain the property of the State of Louisiana. . . ." *Id*. at p. 487. The Act further prohibited the "grant, sale or conveyance of the lands forming the bottoms or beds of said bodies or streams of water." *Id*.

The *Winkler* Court likewise found that the 1910 sale of the property from the GPLD to Mr. Baker was a nullity. Noting that "[e]ven had title vested in the [GPLD] in 1905, after passage of Act 215 of 1908, no levee district had power or authority to transfer lands to private owners," the Court held that "the Board of Commissioners of the [GPLD] had no authority to direct the Sheriff of Plaquemines Parish to sell this property to a private owner." *Id*. at p. 487. Similarly, the patents issued to Mr. Baker, which acknowledged and conveyed the property to Mr. Baker "were [likewise] absolute nullities which vested no title to the property" in Mr. Baker. *Id*. at p. 488.

While the transfers of title to the properties in *Winkler* and *Gulf Oil* were nullities because the properties were insusceptible of private ownership, in the instant matter, even assuming that the 1905 document transferring property from the State to the GPLD included the property at issue in this case, it was no less a

25

nullity. Similarly, the sale of the property from the GPLD to Mr. Baker in 2011 is a nullity as well. We reach this conclusion as to both transfers on the basic principle that "[t]he sale of a thing belonging to another does not convey ownership." La. C.C. art. 2452. Neither the State in 1905, nor the GPLD in 2011, owned the property and neither could transfer an ownership interest in the property.

As early as 1864, our jurisprudence recognized the sale of another's property to be an absolute nullity. In *Alexander v. Gusman*, 16 La. Ann. 251 (La. 1861), the plaintiff purchased property in a succession; however, the transactions preceding the decedent's death reflected that the property had been titled to his grandchildren (pursuant to mixed sale and exchange) rather than the decedent. Finding that the "property . . . never belonged to [the decedent], through whom the plaintiff holds title; . . . the subsequent sale of it, in his succession, was an absolute nullity, being the sale of another's property." *Id*. at p. 251. The Court then held that the "plaintiff, consequently, has no title to the land." *Id*.

Since that time, courts have consistently found sales of property to be absolute nullities when the properties were owned by someone other than the purported vendors. *See*, *e.g.*, *Bickham v. Kelly*, 110 So. 637, 638 (1926) (" 'A sale [of real estate] by a vendor without title vests no right of ownership in the vendee, and is null as a sale of a thing belonging to another.' ")(internal citations omitted); *Greco v. Fedele*, 4 So.2d 75, 78 (La. App. 1 Cir. 1941)("[i]t is obvious that the property which [plaintiff] undertook to sell to the defendant in 1939 did not belong to him, for the reason that the title was then in the State of Louisiana. It further follows that the sale from [plaintiff] to the defendant was null under Article 2452 of the Civil Code.").

More recently, in *Levraea v. Smith*, 424 So.2d 277 (La. App. 1 Cir. 1982), two parties claimed ownership of land and traced their ownership to the same common ancestor, who sold the tract to the defendant in 1958, and who later sold the property in 1959 to the plaintiff's ancestor-in-title. Noting that "[i]t is also well settled in Louisiana that a vendor cannot sell what he does not own," under La. C.C. art. 2452, the Court held that the "common author's sale in 1958 passed title and ownership of the described property to [defendant]. Any subsequent sale could not pass title to the same property. Therefore, [defendant] is owner of the disputed land." *Id*. at p. 279. *See also J-W Operating Co. v. Olsen*, 48,756, p. 5 (La. App. 2 Cir. 1/15/14), 130 So.3d 1017, 1021 ("[t]he sale of a thing belonging to another does not convey ownership.").

Having determined that the transfer of the property by the State to the GPLD in 1905 was null, we likewise note that, at the time of the tax sale, the taxes due on the property had been paid Plaintiffs or their ancestors-in-title. We agree with Mr. Sims that tax sales are presumed valid and that "a tax deed by a tax collector shall be prima facie evidence that a valid sale was made." *Cititax Grp., L.L.C. v. Gibert,* 12-0633, p. 4 (La. App. 4 Cir. 12/19/12), 108 So.3d 229, 232. However, Mr. Sims' contention that, because he purchased the property at a valid tax sale and because the property was not redeemed within the time period set forth in the Louisiana Constitution, §25 (B)(1),[25] the sale cannot now be challenged,[26] has no merit.

---

[25] That provision states: "[t]he property sold [at a tax sale] shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." La. Const. art. VII, § 25 (B)(1).

[26] While Mr. Sims has not assigned as error the trial court's failure to grant his motion to continue the hearing date on the motion for summary judgment and allow testimony from Mr. Sims, in his appellate brief, he advances these issues as a "subset of [his] Assignment of Error regarding [his] Exception of Acquisitive Prescription and Peremption." A trial court "is vested

Louisiana Constitution Article VII, § 25 (B)(1) provides, in pertinent part that "[n]o sale of property for taxes shall be set aside for any cause, *except on proof of payment of the taxes prior to the date of the sale*, unless the proceeding to annul is instituted within six months after service of notice of sale." (Emphasis added). Our long-standing jurisprudence interpreting this provision has made clear that a tax sale of property for which taxes had been paid is an absolute nullity and thus, the redemption period set forth in the Constitution is inapplicable.[27] As explained in *Cressionnie v. Intrepid, Inc.*, 03-1714, pp. 5-6 (La. App. 1 Cir. 5/14/04), 879 So.2d 736, 739-40:

> A sale of property for taxes which were previously paid is an absolute nullity. . . . Thus, evidence of prior payment of taxes establishes an irregularity in the tax adjudication proceedings.
>
> ****
>
> Under LSA-Const. art. 7, sec. 25(C), tax sales are subject to a five-year peremptive period after which certain irregularities of the sale can no longer be asserted. . . . However, by the very wording of this constitutional provision, the defense of prior payment of the taxes for the year in which the property was adjudicated is not subject to the five-year peremptive period. . . . Thus, an

---

with wide discretion regarding its docket, case management, and in determining whether motions for continuances should be granted." *Rowley v. Eye Surgery Ctr. of Louisiana, Inc.*, 06-1243, p. 4 (La. App. 4 Cir. 4/4/07), 956 So.2d 680, 683. Here, it appears that Mr. Sims bases his contention that the trial court erred in this respect because of his advanced age and the trial court's "permit[ting] plaintiffs for the first time to argue PPSO and Assessor erred." We note that this Court has held that "[t]estimony should neither be received nor considered, even with consent of counsel, to decide motion for summary judgment." *Rapp v. City of New Orleans*, 95-1638, p. 2 (La. App. 4 Cir. 9/18/96), 681 So.2d 433, 437. We do not find that Mr. Sims has shown an abuse of the trial court's considerable discretion in denying the motion to continue or in declining to hear testimony at the hearing on the motion for summary judgment.

[27] Conversely, for a relative nullity, the constitutional time limitations do apply. *See Quantum Res. Mgmt., L.L.C. v. Pirate Lake Oil Corp.*, 14-687, p. 5 (La. App. 5 Cir. 4/15/15), 170 So.3d 259, 261 ("[a] relative nullity does not prevent the running of the five-year peremptive period on tax sale attacks established under the 1921 and 1974 Louisiana Constitutions, and therefore could not be a valid basis for summary judgment invalidating the tax sale.").

absolutely null sale of property for taxes which were previously paid is not protected by constitutional peremption. . . . Accordingly, even after a tax sale deed has been of record for a period of more than five years, the defense of prior payment may be asserted.

*See also Chapman-Storm Lumber Co. v. Bd. of Comm'rs for Atchafalaya Basin Levee Dist.*, 200 So. 455, 457 (La. 1941)("[a] tax sale of property upon which the taxes have already been paid is an absolute nullity, not curable by the prescriptive period provided for in the constitution"); *Kallenberg v. Klause*, 162 So.2d 73, 75 (La. App. 4 Cir. 1964)("the sale of property for taxes already paid under a dual assessment, is absolutely null and not protected by the constitutional preemption"); *Quantum Res.*, 14-687, p. 9, 170 So.3d at 263 (internal citations omitted)("[d]efects which have been held to render tax sales absolutely null, and therefore incurable by prescription, include prior payment of taxes and dual assessment"); *Mansfield Hardwood Lumber Company v. Butler*, 234 La. 322, 332, 99 So.2d 129, 133 (La. 1958)("[i]t is indisputable that a sale of property for taxes which were previously paid, no matter by whom, is absolutely null and not protected by the constitutional preemption"); *see also Commercial Nat. Bank in Shreveport v. Dance*, 27,332, p. 5 (La. App. 2nd Cir.1995), 661 So.2d 551, 556; *La Caze v. Boycher*, 80 So.2d 583, 585 (La. App. 1 Cir. 1955)("[i]t is the settled jurisprudence that a tax sale of property upon which the taxes have previously been paid is an absolute nullity, not curable by the prescriptive period provided for in the Constitution").

The *La Caze* Court recognized that "[a]ssessing the property of a parish and making up tax rolls is a tedious and detailed process, humanly impossible to perform without the occurrence of clerical errors." *Id*. at p. 587. Accordingly, "[t]he courts have taken that into consideration in the interpretation of the tax sale

provisions in order that landowners, who have attempted to satisfy the tax liability upon their property, be not deprived thereof through clerical errors necessarily resulting from the assessment process;" thus, for example, "payment of taxes on property by the owner under one assessment prevents acquisition of title in another by tax sale for unpaid taxes under a dual assessment." *Id.*

In the instant case, it is entirely unclear how tax bills were sent on the property to more than one party. However, neither Plaintiffs nor Mr. Sims dispute that the taxes were paid on this property by both sides of this litigation. Based upon the well-settled case law on this issue, it is clear that the 1993 tax sale of the dually-assessed property was an absolute nullity, given that the Plaintiffs or their ancestors-in-title have consistently paid the taxes on the property, including the taxes that were owed for the years preceding the 1993 tax sale to Mr. Sims.[28]

While the tax sale was an absolute nullity, it was not without consequences. As our case law reflects, although the sale of something belonging to another does not convey ownership:

> . . . the sale may be ratified by the owner of the thing sold, can obligate the vendor to deliver and to warrant the purchaser in good faith against eviction, give[] rise to damages in favor of the purchaser, [and] *can serve the purchaser as a just title for acquisitive prescription.*

*Wood v. Zor, Inc.*, 154 So. 2d 632, 635 (La. App. 4 Cir. 1963)(Emphasis added);

*See also Jefferson Sawmill Co. v. Iowa & Louisiana Land Co.*, 48 So. 428, 431 (La. 1909); *La Caze*, 80 So.2d at 587 ("even though a tax sale is invalid, this invalid deed may be the basis for acquisition of an indefeasible title by ten years'

---

[28] The record establishes that taxes were paid by both parties. This Court recognizes that Mr. Sims may be due reimbursement for the costs he paid following the 1993 tax sale, including the taxes and interest. However, we note that this is matter to be determined by another court at a later date.

prescription . . ., if the tax purchaser is in good faith and takes actual and notorious possession of the property.")(citations omitted).

Thus, we turn to the issue of good faith acquisitive prescription, for which Mr. Sims filed an exception in the trial court.

In the trial court and in this appeal, Mr. Sims contends that he has acquired the property at issue through good faith acquisitive prescription, pursuant to La. C.C. arts. 3473 and 3475. In support of his exception of prescription, Mr. Sims argued that that he met all of the requirements under Article 3475 insofar as he had acquired title to the property at the tax sale, had paid taxes on the property for more than ten years (he had been paying taxes on the property for twenty-five years), and he "used this property and possessed it."[29] He also takes the position that he has just title to the property by virtue of the tax sale deed issued to him in 1993, relying on La. R.S. 47:2288, which provides that a "tax sale certificate and the act by which an acquiring person obtains full ownership constitute just title for purposes of acquisitive prescription."

The trial court denied Mr. Sims' exception, finding, in its reasons for judgment, that it was not "supported by the record."

Louisiana Civil Code article Article 3473 provides that "[o]wnership and other real rights in immovables may be acquired by the prescription of ten years." Article 3475 provides that the "requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription." *See also Ensenat v. Edgecombe*, 95-0641, p. 7 (La. App. 4 Cir. 5/15/96), 677 So.2d 138, 143. "The party asserting acquisitive

---

[29] Mr. Sims, here, again argues that the Plaintiffs "judicially confessed that they were not in possession." As we have already found, this contention has no merit. Plaintiffs timely and properly amended their Petition to correct this misstatement.

prescription bears the burden of proving all the facts that are essential to support it." *Barrois v. Panepinto*, 13-0577, p. 2 (La. App. 4 Cir. 1/8/14), 133 So.3d 36, 37 (quoting *St. John Baptist Church of Phoenix v. Thomas*, 08-687, p. 7 (La. App. 4 Cir. 12/3/08), 1 So.3d 618, 623).

For purposes of acquisitive prescription, a title is considered to be "just title" when "the deed is regular in form, is valid on its face, and would convey the property if executed by the owner." *Id.* (citing La. C.C. art 3483, which provides: "A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.").

Just title does not necessarily equate to valid title. To the contrary, as the Comments to Article 3483 indicate:

> A just title is a juridical act, that is, a licit act intended to have legal consequences. Moreover, it is an act translative of ownership or of another real right, such as a sale, donation, or exchange. *A just title need not be derived from the true owner because if that were the case, prescription would have no place*. The law merely requires an act which, if it had been executed by the true owner, would have conveyed ownership or established another real right.

(Emphasis added). *See also Barrois v. Legendre*, 127 So.2d 790, 796 (La. App. 4 Cir. 1961)("[b]y the term 'just title' in cases of prescription, it is not understood that which the possessor may have derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person whom he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property."); *Williams v. Wiggins*, 26,060, p. 6 (La. App. 2 Cir. 8/17/94), 641 So.2d 1068, 1073 ("just title need not

be derived from the true owner. It is enough that a deed contains language sufficient to convey access rights had the grantor possessed such rights.")

Thus, while a transfer of title may be an absolute nullity, which may not be evident from the title, this "does not prevent the running of ten years prescription acquirendi causa, provided the other requisites of such prescription are present." *Callahan v. Authement*, 99 So.2d 531, 544 (La. App. 1 Cir. 1957). Further, although article 2452 prohibits the sale of something belonging to another, as to the purchaser, the sale can serve as just title for acquisitive prescription. *Wood*, 154 So.2d at 635.

Here, it is clear that Mr. Sims had just title, as the tax deed, albeit a nullity, was valid in form, filed into the conveyance records, and translative of title. There is nothing in the record suggesting that Mr. Sims was not in good faith, and there is no allegation that he lacks good faith. Nor is there is any dispute that the property is "a thing susceptible of acquisition by prescription." The remaining question, therefore, is whether Mr. Sims possessed the property for ten years so as to have acquired the property by acquisitive prescription, the determination of which is a question of fact and, thus, subject to the manifest error/clearly wrong standard of review. *Barrois*, 13-0577, p. 3, 133 So.3d at 38. *See also Grieshaber Family Properties, LLC v. Impatiens, Inc.*, 10-1216, p. 6 (La. App. 4 Cir. 3/23/11), 63 So.3d 189, 194 (a trial court's determination as to "whether a party has possessed property sufficient to establish acquisitive prescription is subject to the manifest error standard of review."); *Prescott v. Payne*, 11 So. 140 (La. 1892)(where a tax sale is void, prescription of ten years can only be maintained when the title is accompanied by possession during the ten years).

The burden of proof is on the "party asserting acquisitive prescription" who "bears the burden of proving all the facts that are essential to support it." *Barrois*, 13-0577, p. 2, 133 So.3d at 37.

Generally, "[t]o acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La. C.C. art. 3424. The corporeal "possession must be continuous, public, and unequivocal." *Rathborne v. Hale*, 95-1225, p. 5 (La. App. 4 Cir. 1/19/96), 667 So.2d 1197, 1200 (citing La. C.C. art. 3476, which provides that "[t]he possession must be continuous, uninterrupted, peaceable, public, and unequivocal."). *See also Skillman v. Harvey*, 03-2724, p. 6 (La. App. 1 Cir. 12/30/04), 898 So.2d 431, 435 ("[t]he corporeal possession necessary to support the plea of prescription must include such external signs of possession as to indicate clearly that the possessor holds control and dominion over the property").

In support of his exception of prescription in the instant matter, Mr. Sims maintained that he "exercised civil possession [of the property], paying taxes continually on the property since 1993, as well as hunting fishing and bird watching." Conversely, while the Plaintiffs do not bear the burden of proof on the issue of acquisitive prescription, we note that the Plaintiffs' acts of possession also include the payment of taxes; Plaintiffs' other acts of possession over the years (including those of their predecessors-in-title) consist of granting oil, gas and mineral leases in 1947, 1951, entering into a hunting lease in 2014 (registered in the Plaquemines Parish conveyance records), a fishing and harvesting lease in 2016 (registered in the Plaquemines Parish conveyance records), and an alligator egg harvesting agreement in 2018. The Plaintiffs also cite a 1961 lawsuit in the United States District Court for the Eastern District of Louisiana, which, by

consent judgment dated October 9, 1961, recognized the Plaintiffs' predecessors-in-title as owning the property in its entirety.

It is clear that Mr. Sims' payment of taxes on the property is insufficient to support his contention that he has acquired the property through acquisitive prescription. Our jurisprudence reflects that the payment of taxes on property, alone, is not sufficient evidence of corporeal possession of the property to support an acquisitive prescription claim. *See Jacobs v. S. Advance Bag & Paper Co.*, 82 So.2d 765 (1955); *Chamberlain v. Abadie*, 19 So. 574 (La. 1896). Likewise, while Mr. Sims points to a 1937 mineral lease granted by his ancestor-in-title, our jurisprudence indicates that this, too, is insufficient to meet the burden of proof of acquisition by acquisitive prescription. *See Blanchard v. Norman-Breaux Lumber Co.*, 57 So.2d 211, 215 (La. 1952)("[t]he assessment and payment of taxes and the granting of mineral leases, by the defendant, merely show an intent to possess the land as owner but does not satisfy the requisite amount of corporeal possession required to support the plea of prescription under title translative of property."); *Menefee v. Arkansas La. Gas Co.*, 141 So.2d 58, 62 (La. App. 2 Cir. 1962)(while "[t]here is no question as to the fact that defendants have paid taxes, executed mortgages, leases and made sales of mineral rights over periods far in excess of thirty years, . . . all of these are evidences of civil possession which are unavailing unless preceded by an original, actual, corporeal possession.").

With respect to Mr. Sims' use of the property by fishing, hunting, and bird watching, these, too, are insufficient acts of possession for purposes of acquisitive prescription or to deprive the Plaintiffs' of their ownership of the property. Our case law indicates that "[o]ccasional hunting is insufficient to constitute actual corporeal possession" and "the occasional acts of walking or riding the property

35

are not the type of acts to constitute open, notorious and adverse possession." *Skillman*, 03-2724, p. 7, 898 So.2d at 436. *See also Norton v. Addie*, 337 So.2d 432, 436 (La. 1976)("the only physical use of the property by [defendant] has been his occasional hunting on it, and this is insufficient to establish his corporeal possession of the property or to interrupt plaintiff's possession.").

Even isolated overt acts are insufficient for purposes of acquisitive prescription. In *Nixon v. English*, 22 So.2d 266, 267 (La. 1945), the Supreme Court found that "occasional cutting of trees is not sufficient to support the plea of prescription of ten years." Similarly, occasional grass cutting has been held to not be "in any way sufficiently unequivocal and notorious so as to satisfy the requirement of continuous possession necessary to maintain the plea of ten years' acquisitive prescription." *Authement v. Theriot*, 292 So.2d 319, 327 (La. App. 1 Cir. 1974).

The *Authement* Court found that the record "utterly fail[ed] to establish any extent or delineation of possession by defendant which could possibly be categorized as unequivocal, notorious and sufficient to place the real owner of the property on notice that such adverse possession existed." *Id*. at p. 326. Again, a party seeking to establish a claim of acquisitive prescription must show that his possession was continuous, uninterrupted, peaceable, public and unequivocal, with the intent to possess as owner. *Delacroix Corp. v. Perez*, 98-2447, p. 3 (La. App. 4 Cir. 11/8/00), 794 So.2d 862, 865.

Thus, the record before us does not demonstrate that Mr. Sims met the burden of proof required to establish his ownership of the property based on principles of acquisitive prescription. We find no manifest error in the trial court's

grant of summary judgment and denial of Mr. Sims' exception of acquisitive prescription.

**CONCLUSION**

For the reasons set forth more fully herein, and based on our de novo review of the record, we find that the trial court correctly granted summary judgment in favor of the Plaintiffs. Further, we find no error in the trial court's denial of Mr. Sims' exceptions. We, therefore, affirm the trial court's judgment in all respects.

**AFFIRMED**